UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

RAIMUNDO ANTONIO VIVES LOPEZ,

                      Plaintiff,

           -against-                                  **COMPLAINT**

DEBEVOISE & PLIMPTON LLP,                    **JURY TRIAL DEMANDED**

                      Defendant.

------------------------------------------------------------------------x

       Plaintiff Raimundo Antonio Vives Lopez ("Plaintiff"), by and through his counsel, William K. Li Law, PLLC, for his Complaint against Defendant Debevoise & Plimpton LLP ("Defendant" or "Debevoise") alleges as follows:

## NATURE OF THE ACTION

       1.     This action is brought against Defendant to redress the deprivation of rights secured to Plaintiff by the American with Disabilities Act 1990, as amended, 42 U.S.C § 12101 *et seq.* ("ADA"); the New York State Human Rights Law, N.Y. Exec. Law §§ 290 et seq. ("NYSHRL") and New York City Administrative Code § 8-101 *et seq*. ("NYCHRL").

## JURISDICTION AND VENUE

       2.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding the deprivation of Plaintiff's rights under the ADA. This Court has supplemental jurisdiction over Plaintiff's related claims arising under State and local law pursuant to 28 U.S.C. § 1367(a) because they arise from a common nucleus of operative facts with the federal claims and are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

3. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as there is Diversity of Citizenship between Plaintiff and Defendant and the matter in controversy exceeds the sum or value of $75,000.

4. Plaintiff's domicile is in the nation of Republic of Chile.

5. Plaintiff is a citizen of both Republic of Chile and Kingdom of Spain.

6. Plaintiff is currently not lawfully admitted for permanent residence in the United States.

7. Defendant's primary place of business and headquarters is in New York, New York, United States.

8. Declaratory and injunctive relief is sought under 28 U.S.C. § 2001 et seq.

9. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1), as Defendant conducts business in this district to a sufficient degree to be considered residents of this district under 28 U.S.C. § 1391(d).

10. Venue is also proper as all facts in this matter occurred in the Southern District of New York.

## CONDITION PRECEDENTS

11. On or about July 24, 2023 Plaintiff filed a charge of discrimination and retaliation with the New York Statement Division of Human Rights ("NYSHR") against Defendant, for among other things, failure to rehire or reinstate Plaintiff.

12. The NYSHR in turn dual filed a charge of discrimination and retaliation with the United States Equal Employment Opportunity Commission ("EEOC") on behalf of Plaintiff against Defendant.

13. NYSCHR purportedly issued a "Determination and Order of Dismissal for

Administrative Convenience" on or about February 28, 2024. However, Plaintiff never received this Determination and Order of Dismissal for Administrative Convenience until on or about April 12, 2024 by regular mail in the Republic of Chile.

14. The EEOC purportedly issued a Notice of Right to Sue on or about October 3, 2024. However, Plaintiff never received this Notice of Right to Sue until on or about January 24, 2025 by regular mail in the Republic of Chile.

15. Plaintiff files this action within ninety (90) days of receipt of the Notice of Right to Sue letter from the EEOC pursuant to established caselaw in this Circuit.

## THE PARTIES

16. Petitioner is an attorney admitted to practice law in the Republic of Chile and New York State.

17. Petitioner was admitted to practice law in the Republic of Chile on August 10, 2018.

18. Petitioner was admitted to practice law in New York State on January 23, 2023.

19. Petitioner graduated from Universidad de Los Andes in Chile on or about June 13, 2017 with a law degree (*summa cum laude*).

20. Petitioner then graduated from Leiden Law School in The Netherlands on or about August 27, 2020 with a degree in Advanced Master Studies in International Dispute Settlement and Arbitration.

21. Petitioner graduated from Columbia Law School in New York City on or about October 20, 2021 with a LLM degree.

22. Petitioner has practiced and taught international law and international dispute resolution in New York, Europe and Republic of Chile since 2018.

23. Defendant is an international law firm with offices around the world.

24. Defendant's headquarters is in New York, New York.

**FACTS**

25. Plaintiff was hired as a Second Year Litigation Associate attorney (class of 2020) by Debevoise to work out of Debevoise' New York City headquarters in June 2021.

26. Plaintiff was a highly sought candidate due to his experience and qualification as he was given an offer by Debevoise at the end of his interviews (or the same day) with the International Dispute Resolution practice group's partners on June 2, 2021,

27. Plaintiff's first day of work at Debevoise was October 25, 2021.

28. Plaintiff was hired under the H1B1 Visa granted by the Chile-United States Free Trade Agreement.

29. Plaintiff was initially assigned to perform work for various practice groups within Debevoise, including the International Dispute Resolution practice group.

30. On or about September 1, 2022, Plaintiff chose his major specialization and was accepted to work exclusively in the International Dispute Resolution practice group.

31. Plaintiff received excellent feedback and performance review while working for Debevoise.

32. Plaintiff received a highly positive performance review in June 2022.

33. Plaintiff received ratings between 5 and 7 in a scale of 1 to 7 in this performance review with 7 being the highest rating.

34. Plaintiff also suffered from a chronically painful neuropathic medical condition which substantially limited one or more major of his life activities between 2019 to 2023.

35. Plaintiff's medical condition precluded Plaintiff from sitting down continuously for more than 30 to 60 minutes at a time.

36. Plaintiff first disclosed his medical condition to his advisor, Dietmar Prager ("Mr. Prager"), a partner at Debevoise, in late August 2022 as Plaintiff's medical condition was getting worse.

37. In late August 2022, Plaintiff requested, and was granted permission, to take a medical leave in late September and early October 2022 to have surgery for his medical condition.

38. However, despite trying to manage his painful medical condition and performing his duty, Plaintiff's condition worsened starting in or around mid-September 2022 leading to a need of starting his medical leave earlier than originally expected.

39. As his medical condition worsened, Plaintiff disclosed his condition and his plan to take time off to his team, including his litigation partner Helen Cantwell ("Ms. Cantwell") on September 14, 2022 so he can transition his work to other team members during his absence.

40. Plaintiff ultimately took medical leave from on or about September 23, 2022 until on or about October 12, 2022 to have surgery for his medical condition.

41. Plaintiff met with Ms. Cantwell on October 12, 2022 upon his return to the office from medical leave.

42. During this meeting, Ms. Cantwell surprisingly informed Plaintiff that he was not billing enough hours despite knowing about Plaintiff's medical condition and having just returned from medical leave.

43. Despite Plaintiff reminding Ms. Cantwell of the flare up of his medical condition and his recent medical leave, Ms. Cantwell was unsympathetic and nevertheless demanded Plaintiff to increase his billable hours, to which Plaintiff pledged to comply effective immediately and promptly emailed his team members requesting for instructions to assist them.

44. It was also strongly hinted by Ms. Cantwell during this same meeting that Plaintiff

would soon be terminated from his employment.

45. Indeed, Plaintiff's employment with Debevoise was terminated on October 14, 2022, two (2) days after his return.

46. As a result of this termination, Plaintiff had to leave the United States and return to his home country of Chile within sixty (60) days as he was under a H1B1 Visa.

47. This termination has severely affected Plaintiff's legal career.

48. Plaintiff, via counsel, and Debevoise subsequently negotiated and entered into a confidential settlement agreement and release ("Settlement Agreement") for any possible cause of actions or violations arising out of facts and events that occurred up to the date of execution of the Settlement Agreement by Plaintiff.

49. The Settlement Agreement was entered into on or about March 27, 2023.

50. The Settlement Agreement does not have any clause precluding Plaintiff from reapplying or being rehired or reinstated by Debevoise.

51. The Settlement Agreement also does not preclude Plaintiff from filing a complaint or charge of discrimination or retaliation with an administrative agency such as the NYSHR or the EEOC for injunctive relief.

52. On or about June 26, 2023, Plaintiff submitted his resume via Debevoise´s General Counsel and Partner Christopher Tahbaz to Debevoise' Legal Recruiting team seeking to be reinstated or rehired for the original or similar position of Associate at Debevoise´s International Dispute Resolution practice group in Debevoise's New York City offices.

53. However, Plaintiff was not even contacted for an interview and his application was rejected by Debevoise's Legal Recruiting on July 2, 2023.

54. Plaintiff later learned on or about September 26, 2023, through Debevoise' website,

that Debevoise recently hired two Chilean nationals to join the International Dispute Resolution Group as International Associates in Debevoise' New York offices to start in the fall of 2023.

55. Based on these individuals' profiles on Debevoise's website, it is Plaintiff's understanding that these individuals' experience and qualifications were similar to Plaintiff's.

56. However, neither of these individuals were admitted to practice law anywhere in the United States while Plaintiff was admitted to practice in New York since January 2023.

57. Based on Plaintiff's understanding of Debevoise's hiring practice and hiring timeline, Plaintiff was timely in submitting his application to be in consideration for these positions. Plaintiff's understanding is based on his own experience when interviewing with Debevoise in 2021.

58. There simply could not have been any reason for not even giving Plaintiff an interview for these Associates positions in the International Dispute Resolution Group other than Defendant's discrimination animus against Plaintiff's medical condition or perceived condition based on Debevoise' conduct after Plaintiff returned from medical leave and in retaliation for having previously asserted and negotiated a settlement with Debevoise pertaining to his termination. In particular, the hiring decision makers were likely the same individuals that know about Plaintiff's medical condition and the same ones who made the decision to terminate Plaintiff. These are also the very same individuals who should have been investigated by Debevoise upon receiving notice from Plaintiff's counsel after Plaintiff's termination.

59. Plaintiff has been emotionally distraught in light of Debevoise' discriminatory and retaliatory hiring practice.

**FIRST CAUSE OF ACTION**
**(Discrimination in Violation of the ADA)**

60. Plaintiff repeats and realleges all of the above allegations as though fully set forth

herein.

61. Plaintiff was an individual with a disability under the meaning of the ADA due to having a medical condition which substantially limited one or more major life activities by virtue of not being able to sit down for more 30 to 60 minutes without suffering from severe pain while employed by Defendant.

62. Plaintiff was an employee of Defendant.

63. Defendant was Plaintiff's employer within the meaning of the ADA.

64. Defendant discriminated against Plaintiff in violation of the ADA by refusing to rehire, reinstate or even considered Plaintiff's job application due to Defendant's knowledge of Plaintiff's disability or perceived disability.

65. Plaintiff is as a result entitled to all relief under the ADA.

## SECOND CAUSE OF ACTION
### (Retaliation Under the ADA)

66. Plaintiff repeats and realleges all of the above allegations as though fully set forth herein.

67. Plaintiff belonged to a protected class as a result of his disability or perceived disability pursuant to the ADA.

68. Plaintiff engaged in a protected activity when Plaintiff, via counsel, complained to Defendant about being discriminatorily terminated due to his disability and subsequently entering into the Settlement Agreement.

69. Based on the above, Defendant retaliated against Plaintiff by refusing to rehire, reinstated, reinterview or otherwise even consider Plaintiff's job application after having complained about discriminatory termination and after entering into the Settlement Agreement.

70. Plaintiff is therefore entitled to all relief pursuant to the ADA.

## THIRD CAUSE OF ACTION
### (Disability Discrimination in Violation of the NYSHRL)

71. Plaintiff repeats and realleges all of the above allegations as though fully set forth herein.

72. Plaintiff was a qualified individual with a disability or a perceived disability under the meaning of the NYSHRL due to having a medical condition which substantially limited one or more major life activities by virtue of not being able to sit down for more 30 to 60 minutes without suffering from severe pain while employed by Defendant.

73. Defendant was Plaintiff's employer within the meaning of NYSHRL.

74. Defendant discriminated against Plaintiff in violation of the NYSHRL by refusing to rehire, reinstate or even considered Plaintiff's job application due to knowledge of his disability or perceived disability.

75. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, emotional distress and economic harm for which he is entitled to all relief pursuant to NYSHRL.

## FOURTH CAUSE OF ACTION
### (Retaliation in Violation of the NYSHRL)

76. Plaintiff repeats and realleges all of the above allegations as though fully set forth herein.

77. Plaintiff belonged to a protected class as a result of his disability or perceived disability pursuant to NYSHRL while employed by Defendant.

78. Plaintiff was a qualified individual with a disability or a perceived disability under the meaning of the NYSHRL due to having a medical condition which substantially limited one or

more major life activities by virtue of not being able to sit down for more 30 to 60 minutes without suffering from severe pain while employed by Defendant.

79. Defendant was Plaintiff's employer within the meaning of NYSHRL.

80. Defendant retaliated against Plaintiff in violation of the NYSHRL by refusing to rehire, reinstate or even considered Plaintiff's job application after Plaintiff complained about being discriminatorily terminated due to his disability or perceived disability and entering into the Settlement Agreement.

81. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, emotional distress and economic harm for which he is entitled to all relief pursuant to NYSHRL.

## FIFTH CAUSE OF ACTION
### (Disability Discrimination in Violation of the NYCHRL)

82. Plaintiff repeats and realleges all of the above allegations as though fully set forth herein.

83. Plaintiff was a qualified individual with a disability or a perceived disability under the meaning of the NYCHRL due to having a medical condition which substantially limited one or more major life activities by virtue of not being able to sit down for more 30 to 60 minutes without suffering from severe pain while employed by Defendant.

84. Defendant was Plaintiff's employer within the meaning of NYCHRL.

85. Defendant discriminated against Plaintiff in violation of the NYCHRL by refusing to rehire, reinstate or even considered Plaintiff's job application due to knowledge of his disability or perceived disability.

86. As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, emotional distress and

economic harm for which he is entitled to all relief pursuant to NYCHRL.

## SIXTH CAUSE OF ACTION
**(Retaliation in Violation of the NYCHRL)**

87.     Plaintiff repeats and realleges all of the above allegations as though fully set forth herein.

88.     Plaintiff belongs to a protected class as a result of his disability pursuant to NYCHRL while employed by Defendant.

89.     Plaintiff was a qualified individual with a disability or a perceived disability under the meaning of the NYCHRL due to having a medical condition which substantially limited one or more major life activities by virtue of not being able to sit down for more 30 to 60 minutes without suffering from severe pain while employed by Defendant.

90.     Defendant was Plaintiff's employer within the meaning of NYCHRL.

91.     Defendant retaliated against Plaintiff in violation of the NYCHRL by refusing to rehire, reinstate or even considered Plaintiff's job application due to knowledge of his disability or perceived disability after Plaintiff complained about being discriminatorily terminated and entering into the Settlement Agreement.

92.     As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, emotional distress and economic harm for which he is entitled to all relief pursuant to NYSHRL.

**WHEREFORE**, Plaintiff prays for the following relief:

A.     declaring that Defendant's actions and practices violated the Americans with Disabilities Act, New York State Human Rights Law, and New York City Human Rights Law;

B. enjoining Defendant from further discriminatory and retaliatory conduct;

C. directing Defendant to rehire or reinstate Plaintiff to Plaintiff's former position or a substantially similar position;

D. to make Plaintiff whole by directing Defendant to pay Plaintiff's loss wages and benefits;

E. directing Defendant to pay Plaintiff compensatory damages for his emotional distress caused by Defendants' discriminatory and retaliatory conduct;

F. directing Defendant to pay Plaintiff punitive damages sufficient to punish and deter continuation of Defendant's unlawful employment practices;

G. directing Defendant to pay for Plaintiff's attorneys' fees and legal expenses; and

H. granting additional relief as this Court deems just and proper.

Dated: April 7, 2025

WILLIAM K LI LAW, PLLC

By: */s/ William Li*
William Li
535 Fifth Avenue, 4th Floor
New York, New York 10017
T: (212) 380-8198
wli@wlilaw.com
*Counsel for Plaintiff*