**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RAIMUNDO ANTONIO VIVES LOPEZ, | Civil Case No.: 1:25-cv-02879-MKV |
| Plaintiff, | |
| -against- | |
| DEBEVOISE & PLIMPTON, LLP, | |
| Defendant. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION
TO STAY AND COMPEL ARBITRATION OR IN THE ALTERNATIVE TO DISMISS**

**WILLIAM K LI LAW, PLLC**
William Li
535 Fifth Avenue, 4th Floor
New York, New York 10017
T: (212) 380-8198
wli@wlilaw.com
*Counsel for Plaintiff*

## <u>TABLE OF CONTENTS</u>

Page

PRELIMINARY STATEMENT...............................................................................................1

STATEMENT OF MATERIAL FACT..................................................................................2

I.      STANDARDS OF REVIEW.............................................................................5

II.     LEGAL ARGUMENTS...................................................................................6

    A.  The Arbitration Provision is Unenforceable.......................................6

            i.   The Arbitration Provision Lacks Consideration
               and Mutual Assent............................................................8

    B.  Defendant has Misstated the Applicable Pleading Standard
        for Discriminatory Failure to Hire.....................................................12

            i.   Defendant Raises Factual Arguments from
               Its Motion to Stay and Compel into its Motion to
               Dismiss.............................................................................17

           ii.  Plaintiff is also Discriminated Against Based on
               a History of Disability.......................................................20

    C.  Plaintiff has a Prima Facie Retaliation Case....................................21

    D.  Plaintiff Should be Provided Leave to Amend
        the First Amended Complaint............................................................25

CONCLUSION.................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

Cases                                                                                      Page

*Abdullayeva v. Attending Homecare Servs. LLC*,
928 F.3d 218 (2d Cir. 2019)……………………………………….…….……………8

*Alston v. New York City Transit Auth*.,
14 F. Supp. 2d 308 (S.D.N.Y. 1998)………………………………….……………..…..23

*Anderson v. City of N.Y.*,
712 F. Supp. 3d 412 (S.D.N.Y. 2024)………………………………….……………...17

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)………………………….……….…………5

*Awad v. Extended Nursing Pers.*,
2025 U.S. Dist. LEXIS 42549 (S.D.N.Y. March 10, 2025)…………………………………11

*Barrios-Contreras v. Big Fish Entm't LLC*,
2024 WL 3435854 (S.D.N.Y. July 17, 2024)……………………………………………11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)……………………………………....1

*Bensadoun v. Jobe-Riat*, 316 F.3d 171 (2d Cir. 2003)……………..…………………..…5, 10

*Bertuglia v. City of New York*,
839 F. Supp. 2d 703, 713 (S.D.N.Y. 2012)………………………………………..…..6

*Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008)…………………………………16, 18

*Bristol v. Securitas Sec. Servs. USA, Inc*.,
597 F. Supp. 3d 574, 578 (S.D.N.Y. 2022)………………………………………..5, 10

*Brown v. Daikin Am. Inc.*, 756 F.3d 219 (2d Cir. 2014)………………………………15, 16

*Brown v. N.Y.C. Dep't of Educ*.,
2021 U.S. Dist. LEXIS 181382 (S.D.N.Y. Aug. 31, 2021)………………………………21

*Butts v. N.Y. City Dep't of Hous. Pres. & Dev*.,
2007 WL 259937 (S.D.N.Y. Jan. 29, 2007)……………………………..………………14

*C.C. v. Google, LLC*, 2025 WL 1938809 (S.D.N.Y. July 15, 2025)……………….………20

*Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81 (2d Cir. 1996)…………………………..…14

*Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991)……………………………25

*Davitashvili v. Grubhub Inc.*,
2023 U.S. Dist. LEXIS 44780 (S.D.N.Y. Mar. 16, 2023)……………………………………………7

*Dawson v. N.Y.C. Trans. Auth.*,
624 Fed. Appx. 763 (2d Cir. 2015)…………………………………………………………..6

*Diaz v. City Univ. of N.Y.*,
2015 WL 5577905 (S.D.N.Y. Sept. 22, 2015)…………….…………………………….……24

*Doe v. Columbia Univ.*, 831 Fr.3d 46 (2d Cir. 2016)………..…………………………….……6

*Fishman v. Off. of Ct. Admin. N.Y. State Cts.*,
2020 WL 1082560 (S.D.N.Y. Mar. 5, 2020)………………………………………………20

*Flanagan v. Girl Scouts of Suffolk Co.*,
2025 U.S. App. LEXIS 12747 (2d Cir. May 27, 2025)………………………………….……13

*Fox v. Costco Wholesale Corp.*, 918 F.3d 65 (2d Cir. 2019)……………………………….……21

*Franklin v. Consol. Edison Co. of N.Y., Inc.*,
1999 WL 796170 (S.D.N.Y. Sept. 30, 1999)…………………………………………....…13

*Gentile v. Touro L. Ctr.*,
2024 U.S. Dist. LEXIS 49687 (E.D.N.Y. Mar. 20, 2024)………………….…………….……19

*Goldman v. Belden*, 754 F.2d 1059 (2d Cir. 1985)…………………………………………..…6

*Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111 (2d Cir. 2000)……………………………………22

*Graham v. Long Island R.R.*, 230 F.3d 34 (2d Cir. 2000)……………………………………16

*Hall v. Petro Holdings, LLC*,
2019 WL 3945515 (D. Conn. Aug. 21, 2019))…………………………………………19

*Hicks v. Baines*, 593 F.3d 159 (2d Cir. 2010)……………………………………………..…21

*Howard v. MTA Metro-North Commuter R.R.*,
866 F. Supp. 2d 196 (S.D.N.Y. 2011)………………………….………………..………14

*Ibela v. Allied Universal*,
2022 U.S. App. LEXIS 12155 (2d Cir. May 5, 2022)………….…………………….……21

*Idlisan v. N.Y.C. Health & Hosps. Corp.*,
2013 U.S. Dist. LEXIS 163151 (S.D.N.Y. Nov. 15, 2013)…………………………………………17

*In re Jiffy Lube Int'l, Inc., Text Spam Litig*.,
847 F. Supp. 2d 1253 (S.D. Cal. 2012)……………………………………………………..…7

*JLM Indus., Inc. v. Stolt-Nielsen SA*,
387 F.3d 163 (2d Cir. 2004)…………………………………………………………………10

*Johnson v. Levy*, 812 F. Supp. 2d 167 (E.D. N.Y. 2011)…………………..……………………18

*Kunik v. N.Y.C. Dep't of Educ*.,
2017 U.S. Dist. LEXIS 164132 (S.D.N.Y. Sep. 29, 2017)…………….……………..……….15

*Leonard F. v. Isr. Disc. Bank of N.Y.*,
199 F.3d 99 (2d Cir. 1999)……………………………………………………………………6

*Littlejohn v. City of New York*, 795 F.3d 297 (2d Cir. 2015)…………………..……...5, 14

*Lovejoy-Wilson v. NOCO Motor Fuel, Inc*.,
263 F.3d 208 (2d Cir. 2001)…………………………………………………………………...13

*Lynch v. City of New York*, 952 F.3d 67 (2d Cir. 2020)…………………………….…………..5

*Mandell v. Cnty. of Suffolk*, 316 F.3d 368 (2d Cir. 2003)…………………………..…………18

*Mauro v. N.Y.C. Dep't of Educ*.,
2022 WL 17844438 (2d Cir. Dec. 22, 2022)……………………………………….……6

*McFarlane v. Altice USA, Inc.*,
524 F. Supp. 3d 264 (S.D.N.Y. 2021)………………………………………………………6, 8

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc*.,
715 F.3d 102 (2d Cir. 2013)…………………………………………………………………...12

*Miller v. Taco Bell Corp*.,
204 F. Supp. 2d 456 (E.D.N.Y. 2002)………………………………………………………20

*Moore v. Kingsbrook Jewish Med. Ctr*.,
2013 U.S. Dist. LEXIS 10711 (E.D.N.Y. July 30, 2013)…………………………..…………14

*Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills*,
815 F. Supp. 2d 679 (S.D.N.Y. 2011)………………………………………………….……15

*N.Y. Knicks, LLC v. Maple Leaf Sports & Ent. Ltd*.,
2024 U.S. Dist. LEXIS 114056 (S.D.N.Y. June 28, 2024)…………………….……………..7

*Novartis Pharma AG v. Amgen Inc.*,
2020 U.S. Dist. LEXIS 101145 (S.D.N.Y. June 9, 2020)……………………….……………8

*Novick v. Vill. of Wappingers Falls*,
376 F. Supp. 3d 318 (S.D.N.Y. 2019)…………………….……….……………....…25

*Perez v. City of New York*, 843 F. App'x 406 (2d Cir. 2021)……………….……….……….21

*Pothen v. Stony Brook Univ.*,
211 F. Supp. 3d 486 (E.D.N.Y. 2016)……………………………………………………15

*Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115 (2d Cir. 2024)…………………….…..…..13

*Quadrant Structured Prods. Co., Ltd. v. Vertin*,
23 N.Y.3d 549, 992 N.Y.S.2d 687 (2014)………………………………………………8

*Rajjak v. McFrank & Williams*,
2001 WL 799766 (S.D.N.Y. July 13, 2001)…………………………………………………11

*Reed v. A.W. Lawrence & Co., Inc.*,
95 F.3d 1170 (2d Cir. 1996)……………………………………………………...……23

*Reliable Automatic Sprinkler Co. Inc. v. Sunbelt Grp. L.P.*,
472 F. Supp. 3d 64 (S.D.N.Y. 2020)…………………………………………….……………..9

*Rennalls v. Alfredo*,
2015 U.S. Dist. LEXIS 133641 (S.D.N.Y. Sept. 30, 2015)………………………………………25

*Rice v. Smithtown Volkswagen*,
321 F. Supp. 3d 375 (E.D.N.Y. 2018)……………………….………………………..…18

*Riddle v. Citigroup*,
2014 U.S. LEXIS 85406 (S.D.N.Y. May 20, 2014)……………………………..……………24

*Romanello v Mesa Sanpaolo, S.p.A.*,
22 N.Y.3d 881, 976 N.Y.S.2d 426 (2013)……………………………………………………13

*Shukla v. Deloitte Consulting LLP*,
2020 U.S. Dist. LEXIS 104555 (S.D.N.Y. June 15, 2020)…………………………..……17, 19

*Smith v. St. Luke's Roosevelt Hosp.*,
2009 U.S. Dist. LEXIS 69995 (S.D.N.Y. Aug. 11, 2009)……………………………….……..12

*Smyth v City of New York*, 2018 WL 4080144 (N.Y. Cty. 2018)……………….……………13

*Stonehill Cap. Mgt. LLC v. Bank of the W.*,
28 N.Y.3d 439, 45 N.Y.S.3d 864 (2016)…………………………………………………....……9

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)……………………………...………6, 14

*Syeed v. Bloomberg L.P.*,
41 N.Y.3d 446, 211 N.Y.S.3d 819 (2024)……………………….….…………………………13

*TechnoMarine SA v. Giftports, Inc.*,
758 F.3d 493 (2d Cir. 2014)………………………………….….……………………..25

*Trachtenberg v. Dep't of Educ.*,
937 F. Supp. 2d 460 (S.D.N.Y. 2013)……………………….…………………...……18

*Treglia v. Town of Manlius*,
313 F.3d 713 (2d Cir. 2002)……………………………………...………………....13, 21

*Vega v. Hempstead Union Free Sch. Dist.*,
801 F.3d 72 (2d Cir. 2015)…………………………………..………...…………14

*Vengalattore v. Cornell Univ.*, 36 F.4th 87 (2d Cir. 2022)…………….………….…….5

*Vinagray v. Experian Info. Sols., Inc.*,
2021 U.S. Dist. LEXIS 43419 (E.D.N.Y. Mar. 8, 2021)………………………….……7

*Viruet v. City of N.Y.*,
2019 U.S. Dist. LEXIS 75159 (S.D.N.Y. May 3, 2019)………………………….……..16

*Wang v. Palmisano*, 157 F. Supp. 3d 306 (S.D.N.Y. 2016)…………………...………24

*Wasserman v. New York City Dept. of Ed.*,
2025 WL 1906978 (S.D.N.Y. July 10, 2025)……………………………………....19, 20

*Wexler v. AT&T Corp.*, 211 F. Supp. 3d 500 (E.D.N.Y. 2016)……………………..………..7

*Woolf v. Strada*, 949 F.3d 89 (2d Cir. 2020)…………………………………...……..12

*Wright v. White Plains Hosp. Med Ctr.*,
237 A.D.3d 1143 (2d Dept. 2025)……………………………………………………13

*Zimmerman v. Assocs. First Capital Corp.*,
251 F.3d 376 (2d Cir. 2001)……………………………………...……………5

**Statutes**

9 U.S.C. § 4 ………………………………………….……………………….………………………..5, 10

American with Disabilities Act of 1990 ("ADA")………………….……………………*passim*

Fed. R. Civ. P. 8………………………………………………………………….……………………...1

Fed. R. Civ. P. 12(b)(6)………………………………………………………………….…..*passim*

Fed. R. Civ. P. 15(a)(2)……………………………………………….……………………….…25

New York State Human Rights Law ("NYSHRL")………………….……………….……..*passim*

New York City Human Rights Law ("NYCHRL")………………...……………………..passim

Plaintiff Raimundo Antonio Vives Lopez ("Plaintiff"), by and through his counsel, William K. Li Law, PLLC, together with the accompanying Declaration of William Li, Esq, and the exhibits attached thereto, submit this Memorandum of Law in Opposition to Defendant Debevoise & Plimpton LLP's ("Defendant" or "Debevoise") Motion to Stay and Compel Arbitration or, in the Alternative, to Dismiss Plaintiff's First Amended Complaint (the "Motion"). For the reasons set forth herein, the Motion should be denied in its entirety.

## PRELIMINARY STATEMENT

Defendant attempts a clever sleight of hand in simultaneously moving this Court both to stay this action and compel arbitration based upon what it purports to be a fully-enforceable arbitration clause in a prior Agreement (and not a stand-alone arbitration agreement as it repeatedly referenced), but then, nonetheless, goes on to move to dismiss on the merits. In so doing, Defendant first sets forth the somewhat relaxed standard of review for motions to stay and compel arbitration which allows for some incorporation of documents and evidence outside the pleading. However, once Defendant has its foot in the door by inserting factual argument outside the Complaint for the first portion, it then continues to raise largely factual arguments in support of a hyper-critical analysis that turns the *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and Rule 8's "plausible claim for relief" standard on its head, by seemingly requiring Plaintiff to plead each and every conceivable fact, most of which are in Defendant's exclusive and peculiar possession and control, to support its city, state and federal discrimination and retaliation claims at this early pleading stage.

In so doing, Defendant deceptively conflates the applicable standards for each type of motion in an effort to introduce facts in its motion to dismiss that would be unavailable to almost any failure to hire plaintiff at this stage, involving internal processes and subjective knowledge within Defendant's own organization to attempt to refute the sufficiency of Plaintiff's well-pleaded

claims. Defendant relies extensively on factually dissimilar disability discriminatory termination caselaw as opposed to a failure to hire context and extensive citation to cases involving *pro se* plaintiffs to support its Motion.  The Court should ignore this attempted muddling of law and facts and instead draw a hardline distinction between the two bases of relief requested and their respective standards of review and deny Defendant's motion in its entirety.

## STATEMENT OF MATERIAL FACT

Plaintiff, a LLM graduate of Columbia Law School in June 2021, is an experienced international dispute attorney who is licensed to practice law in Chile since June 2017 and in New York State since January 2023. (First Amended Complaint ("FAC")[1], ECF No. 20, ¶¶ 16-18, 21) Defendant is a well-known international law firm headquartered in New York City. *Id*. ¶¶ 23-24.

On or about June 3, 2021, Plaintiff was hired as a Second Year Litigation Associate attorney[2] (treated as a class of 2020) by Defendant to work out of Defendant's New York City headquarters after obtaining his LLM degree. *Id*. ¶ 25. Plaintiff was a highly sought after candidate as he was given an offer by Defendant at the end of his interviews (or the same day) with the partners of the International Dispute Resolution practice group ("IDRG").. *Id*. ¶¶ 26-17, 30. Plaintiff received excellent feedback and performance reviews while working for Defendant. *Id*. ¶¶ 31-33.

Plaintiff was also an individual with a disability or perceived disability as he suffered from a chronically painful neuropathic medical condition which substantially limited one or more major of his life activities during his employment with Defendant as it precluded him from sitting continuously for more than 30 to 60 minutes at a time. *Id*. ¶¶ 34-35. Plaintiff first disclosed his

---

[1] Additional facts may be obtained from the FAC.

[2] As is the norm in the legal industry, Plaintiff's formal title at the time of his hire after graduating from a U.S. law school was "Law Clerk" until he was formally admitted to practice law in the United States.

medical condition to his advisor and original hiring partner, Dietmar Prager ("Mr. Prager"), in late August 2022. *Id*. ¶ 36. As his medical condition worsened, Plaintiff was required to take medical leave starting from on or about September 23, 2022 until on or about October 10, 2022 to have surgery for his medical condition and recovery from same. *Id*. ¶¶ 39-40.

Plaintiff had a meeting with his litigation partner and supervisor Helen V. Cantwell, Esq. ("Ms. Cantwell") on or about October 12, 2022 upon his return from medical leave. *Id*. ¶ 41. At this meeting, Ms. Cantwell surprisingly informed Plaintiff that he was not billing enough hours despite having knowledge of Plaintiff's medical condition, resultant leave and the fact that he had just returned from such leave. *Id*. ¶ 42. Despite Plaintiff reminding Ms. Cantwell of the aggravation of his medical condition and his recent medical leave, Ms. Cantwell was unsympathetic and demanded Plaintiff to increase his billable hours, to which Plaintiff pledged to immediately address and promptly emailed his team members requesting additional work assignments with which he could provide assistance. *Id*. ¶ 43. Plaintiff was nevertheless terminated on October 14, 2022, just two (2) days after meeting with Ms. Cantwell and mere days after his return from medical leave. *Id*. ¶¶ 44-45.

Plaintiff, *via* his then counsel, and Defendant subsequently negotiated and entered into a Agreement and release (the "Agreement") on or about March 27, 2023 (Tahbaz Decl. Ex. A. Declaration of Christopher K. Tahbaz, Esq. ("Mr. Tahbaz") ("Tahbaz Decl.") Ex. A (ECF No. 27-1)) for any possible causes of actions arising out of facts and events that occurred up to the date of execution of the Agreement by Plaintiff. *Id*. ¶¶ 48-49. The Agreement **does not** have any provision, clause or term precluding Plaintiff from reapplying or being rehired by Defendant (commonly known as a "no rehire" provision) which are relatively typical in this context. *Id*. ¶ 50. In fact, there is no consideration whatsoever in the Agreement that could rationally be apportioned for Plaintiff to arbitrate any claims he may have from facts arising after the signing of the Agreement. *See*

*generally* Tahbaz Decl. Ex. A.

On or about June 20, 2023, Plaintiff submitted his application to Defendant's Legal Recruiting team *via* General Counsel and Partner Mr. Tahbaz, seeking a substantially similar position of Associate at the IDRG. FAC ¶ 52. Defendant expressly acknowledged in e-mails that Plaintiff made a job "application" and on July 12, 2023, Mr. Tahbaz emailed Plaintiff with one his former hiring partners Dietmar Prager, Esq. ("Mr. Prager") being cc'd, showing that, at a minimum, one of the decision makers from IDRG was aware of Plaintiff's application. *Id*. ¶ 54.

From Plaintiff's prior experience interviewing with Defendant and its hiring process timeframes, it would traditionally have been hiring candidates with qualifications similar to Plaintiff's at the time that he was seeking to apply. *Id*. ¶ 58. Plaintiff should be a highly sought after attorney for Debevoise based on his qualifications as he was informed by Mr. Prager, shortly after he was hired in June 2021, that it always had a need for attorneys who were also licensed to practice in Chile. *Id*. ¶ 59. Mr. Prager further informed Plaintiff that Defendant would often consider, interview and hire attorneys even when there was no immediate specific vacancy or need but to be prepared for anticipated future needs, such as for Chilean licensed attorneys. *Id*. ¶ 60.

However, not only was Plaintiff not hired, but he was also not even offered an interview and his application was formally rejected by Debevoise on or about July 2, 2023. *Id*. ¶ 60. Plaintiff later learned in late September 2023, through Debevoise' website, that it had recently hired two Chilean nationals with similar experience as Plaintiff to join the IDRG as International Associates in its New York City offices for the fall of 2023. *Id*. ¶¶ 62-66. However, neither of these two individuals were admitted to practice law in any United States jurisdiction at the time of their hire as was Plaintiff. *Id*. ¶ 67. Defendant has proffered inconsistent explanations for refusing to consider Plaintiff's candidacy, including asserting that no vacancy existed while also conceding its hiring of these two (2) similarly situated individuals. *Id*.

The hiring decisionmakers were likely the same individuals that had prior notice and knowledge of Plaintiff's medical condition and contributed to the decision to terminate Plaintiff. *Id*. ¶ 68. These are also the very same individuals who would have been involved in Defendant's investigation of Plaintiff's post-termination discrimination claims. *Id*.

## I.    **STANDARDS OF REVIEW**

When a motion to compel arbitration is brought, a "court applies a standard similar to that applicable for a motion for summary judgment." *Bristol v. Securitas Sec. Servs. USA, Inc*., 597 F. Supp. 3d 574, 578 (S.D.N.Y. 2022) (citing *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)). "If undisputed facts in the record require[] the issue of arbitrability to be resolved against the Plaintiff as a matter of law," the motion to compel arbitration must be granted. *Bensadoun, supra*. If, however, the party opposing arbitration can show "there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Id.* (citing 9 U.S.C. § 4).

By contrast, to prevail against a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Vengalattore v. Cornell Univ*., 36 F.4th 87, 102 (2d Cir. 2022) (*quoting Lynch v. City of New York*, 952 F.3d 67, 74 (2d Cir. 2020); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (*quoting Iqbal*, 556 U.S. at 678). "On a motion to dismiss, all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015). Furthermore, the evidence necessary to satisfy a plaintiff's burden is "minimal" at the pleading stage. *Id*. at 313 (quoting *Zimmerman v. Assocs. First Capital Corp*., 251 F.3d 376, 381 (2d Cir. 2001). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint

or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted). Thus, at this stage, the Court's role is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 713 (S.D.N.Y. 2012) (quoting *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985)).

The Second Circuit has "often vacated improper dismissals in discrimination cases where courts apply overly stringent pleading standards, cautioning against imposing 'too high a burden on plaintiffs alleging discrimination at the 12(b)(6) stage.'" *Mauro v. N.Y.C. Dep't of Educ.*, No., 2022 WL 17844438, at *3 (2d Cir. Dec. 22, 2022) (*quoting Doe v. Columbia Univ.*, 831 Fr.3d 46, 55 n.8 (2d Cir. 2016)); *see also Dawson v. N.Y.C. Trans. Auth.*, 624 Fed. Appx. 763, 770 (2d Cir. 2015) ("At the pleading stage, district courts would do well to remember this exceedingly low burden that discrimination plaintiffs face...."); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002) (holding that "an employment discrimination plaintiff need not plead a prima facie case of discrimination").

## II.    **LEGAL ARGUMENTS**

### A.    **The Arbitration Provision is Unenforceable**

The relevant arbitration provision in the Settlement by its terms requires "any other dispute between the parties" to be arbitrated is an overly-broad and limitless "infinite arbitration clause" that has been rejected by courts in this and other Circuits. An arbitration provision is not enforceable if it lacks any "nexus" to the terms and conditions of the agreement in question and thus is considered by courts to be an unenforceable infinite arbitration clause. *See, e.g., McFarlane v. Altice USA, Inc.*, 524 F. Supp. 3d 264, 275-80 (S.D.N.Y. 2021) (citations omitted).

Courts in this Circuit agree in finding infinite arbitration clauses to be unenforceable whether by virtue of being unconscionable or for lacking the necessary elements of contract formation. *See, e.g., Vinagray v. Experian Info. Sols., Inc.*, 2021 U.S. Dist. LEXIS 43419, at *16-17 (E.D.N.Y. Mar. 8, 2021) (agreeing as to overbreadth of arbitration clause that explicitly covered "all disputes, controversies or claims between [the company] and [the consumer] (including breach of warranty, contract, tort or any other claim)" because a lawsuit "regarding a tort action arising from a completely separate incident could not be forced into arbitration—such a clause would clearly be unconscionable.") (citing and quoting *In re Jiffy Lube Int'l, Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253, 1263 (S.D. Cal. 2012)); *Wexler v. AT&T Corp.*, 211 F. Supp. 3d 500, 503-05 (E.D.N.Y. 2016) (citations omitted) (stating that to uphold an infinite arbitration clause could lead to the "absurd results" of the plaintiff telecom customer having to arbitrate a tort claim against the defendant AT&T if he were to be hit by an AT&T vehicle or for a securities fraud claim against AT&T); *N.Y. Knicks, LLC v. Maple Leaf Sports & Ent. Ltd*., 2024 U.S. Dist. LEXIS 114056, at *22-26 (S.D.N.Y. June 28, 2024) ("Infinite arbitration clauses are contract provisions that, '[i]f enforced according to their terms, [] would require arbitration of **any** claims between [the parties], including claims without any nexus to the agreements containing the clauses." *Davitashvili v. Grubhub Inc*., 2023 U.S. Dist. LEXIS 44780, at *28-29 (S.D.N.Y. Mar. 16, 2023) (emphasis added).

Defendant attempts to argue that the nexus of this portion of the arbitration provision pertains to a purported release of right to being rehired. However, this is demonstrably false as the Agreement does **not** contain any "no re-hire" provision, as are typical in severance or employment related-settlement agreements. Defendant, one of the largest, most prestigious law firms in the United States, could certainly have included a "no re-hire" clause had it intended to do so. It is well settled in New York contract law that "'if parties to a contract omit terms — particularly,

terms that are readily found in other, similar contracts — the inescapable conclusion is that the parties intended the omission." *Novartis Pharma AG v. Amgen Inc.*, 2020 U.S. Dist. LEXIS 101145, at *11 (S.D.N.Y. June 9, 2020) (citing and quoting *Quadrant Structured Prods. Co., Ltd. v. Vertin*, 23 N.Y.3d 549, 560, 992 N.Y.S.2d 687 (2014)).

Furthermore, the Agreement explicitly pertains only to actual or potential claims that Plaintiff may have had based on facts or events that occurred up to the date of execution on or about March 28, 2023. The issues here, however, arise from facts and events that occurred after the execution of the Agreement, never mentioned or encompassed by its terms.[3] As the *McFarlane* court aptly concluded "[i]n short, whether as a matter of contract formation or unconscionability, the Court holds that the Arbitration Provision does not apply to Plaintiffs' claims to the extent that they lack any nexus to the cable service agreement …" *McFarlane*, 524 F. Supp. 3d at 279. Similarly, Plaintiff's claims do not arise from the Agreement or his prior employment but from subsequent application for employment, the discriminatory and retaliatory failure to be hired by Defendant. As such the "infinite arbitration clause" at issue here is moreover unenforceable on its limitless overbreadth.

### i.  The Arbitration Provision Lacks Consideration and Mutual Assent

The "infinite arbitration clause" in the Agreement is also unenforceable due to a lack of consideration and mutual assent. The validity of any arbitration agreement is based on "state contract law principles." *See Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218, 222 (2d Cir. 2019). "To form a binding contract [under New York law,] there must be a meeting of the minds, such that there is a manifestation of mutual assent sufficiently definite to assure that the

---

[3] If deemed necessary, the Court has the discretion to unseal or order Defendant to un-redact additional portions of the Agreement to be able to verify its exact scope and terms or by reviewing and referencing the full unredacted version that was filed under seal by Defendant.

parties are truly in agreement with respect to all material terms." *See Reliable Automatic Sprinkler Co. Inc. v. Sunbelt Grp. L.P.*, 472 F. Supp. 3d 64, 72 (S.D.N.Y. 2020) (quoting *Stonehill Cap. Mgt. LLC v. Bank of the W.*, 28 N.Y.3d 439, 45 N.Y.S.3d 864 (2016). However, the Agreement clearly states that the consideration for the settlement payment only pertains to issues arising out of his employment at Defendant and for releasing any claims which Plaintiff may have against Defendant up to the date of its execution. The relevant provision states:

> WHEREAS, without any admission of liability or wrongdoing by any Party, the Parties mutually desire to resolve all disputes between them, including, but not limited to, any and all disputes which may in any way arise out of or under, be connected with or relate to Vives Lopez's employment at Debevoise, his activities or experiences at Debevoise, his separation from employment at Debevoise, the handling of immigration law-related matters in connection with his employment at and separation from employment at Debevoise, the conduct of any current or former officers, partners, employees, representatives, or agents of Debevoise or any other claims which were or could have been asserted by Vives Lopez at any time **up until the date that Vives Lopez executes this Agreement**.

Tahbaz Decl. Ex. A at 1 and ¶ 2 (emphasis added).

The scope of the claims released in the Agreement is furthermore affirmed in Section 2, General Release and Covenant Not to Sue, in which it states in relevant part:

> In **consideration** of the promises herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Vives Lopez, on behalf of himself and his heirs, executors, successors, and assigns (the "Vives Lopez Releasing Parties"), hereby fully and generally releases, discharges and covenants not to sue or commence any legal action or arbitration against Debevoise, its current, former and future parents, subsidiaries, affiliates, predecessors and successors, and each of the foregoing entities' respective current, former and future partners, officers, directors, shareholders, employees and representatives…in their personal and professional capacities (the "Debevoise Released Parties") with respect to any and all claims, demands, costs, rights, causes of action, complaints, losses, damages and all liability of whatever kind and nature, whether known or unknown, **which the Vives Lopez Releasing Parties may have at the time of signing this Agreement or had at any time prior thereto**…

*Id*. at 2 (emphasis added).

As such, there is a lack of consideration for Plaintiff to be constrained to arbitrate any potential future claims unrelated to the subject matter of the Agreement, such as any and all limitless facts that could arise after its execution. Indeed, and as will be stated, *infra*, the arbitration agreements in cases relied upon by Defendant specify the consideration given to agree to arbitrate any and all claims, which is lacking here. Furthermore there is no mutual assent in agreeing to arbitrate all claims given that in the context of the Agreement, as it only releases actual and potential then-existing claims Plaintiff may have had based on events that occurred **prior** to its signing.

"The Second Circuit has held that a court considering a motion to compel arbitration of a dispute first must 'determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.'" *Bristol*, 597 F. Supp. at 578 (*citing JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004)). When a motion to compel arbitration is brought, a "court applies a standard similar to that applicable for a motion for summary judgment." *Bensadoun*, 316 F.3d at 175. "If undisputed facts in the record require[] the issue of arbitrability to be resolved against the Plaintiff as a matter of law," the motion to compel arbitration must be granted. *Id*. If, however, the party opposing arbitration can show "there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Id*. (citing 9 U.S.C. § 4). In this case, Plaintiff did not agree to arbitrate any claim he may ever have against Defendant based on events that occurred after the signing of the Agreement as the consideration he received was solely to release claims he may have had arising out of events that occurred prior to its signing.

Despite Defendant's attempt to muddle the facts by misstating that Plaintiff's application arises or relates to the terms of the Agreement, let it be clear again that the Agreement does **not** contain any "no-rehire" restriction whatsoever that would form a nexus to his subsequent application. Thus, issues pertaining to Plaintiff's attempt to seek new employment with Defendant do not automatically relate to any subject matter of the Agreement.

The legal authority relied upon by Defendant are readily distinguishable or are factually inapposite from the current matter pertains to arbitration agreements that explicitly provide consideration for the plaintiff to arbitrate their claims, arising from issues within the scope of the parties existing relationship,[4] unlawful termination,[5] and in one instance involved a reality television show participant alleging breach of contract rather than a failure to hire.[6]

---

[4] In *Awad v. Extended Nursing Pers.*, 2025 U.S. Dist. LEXIS 42549 (S.D.N.Y. March 10, 2025) the parties had a separate five (5) page arbitration agreement ("Awad Agreement") (*See* Li Aff. Ex. A) as a part of the plaintiff's employment agreement detailing the terms and conditions of the agreement to arbitrate rather than a mere mention as in the Agreement. Furthermore, Section 1 of the *Awad* Agreement clearly states that it was made "in consideration of Employee's employment or continued employment with the Company" whereas the Agreement in this case lacks any consideration for Plaintiff to agree to arbitrate, particularly as it pertains to any claims based on events that might only occur after its signing. Indeed, the consideration provided for in the Agreement clearly states that it was for Plaintiff's release of claims that he may have asserted prior to its signing.

[5] In *Rajjak v. McFrank & Williams,* 2001 WL 799766 (S.D.N.Y. July 13, 2001) the dispute was based on an allegation of unlawful termination rather than subsequent failure to hire. Furthermore, the arbitration agreement for this matter is not accessible via ECF making it impossible to fully determine or review the terms of the arbitration agreement.

[6] In *Barrios-Contreras v. Big Fish Entm't LLC*, 2024 WL 3435854 (S.D.N.Y. July 17, 2024), the parties agreed to arbitrate "[a]ll claims, controversies or disputes arising out of, in connection with, or **relating to this [Participant] Agreement**, the performance or breach thereof or default thereunder, whether based on contract, tort, or statute." (emphasis added) (Li Aff. Ex. B at 14).    Nothing in the PARTICIPANT AGREEMENT, which is not an employment related agreement, states that the parties agreed to arbitrate separate and unrelated claims outside of the scope of the agreement or an infinite amount of potential future claims that the parties may have against each other regardless of whether they had any nexus whatsoever with the scope of the agreement, such as any disputes that could arise between the parties that may be wholly unrelated to the Agreement in the current case. *See id*.

**B.** **Defendant Has Misstated the Applicable Pleading Standard for Discriminatory Failure to Hire**

Defendant's alternative request to dismiss the FAC is premised upon a combination of misapplied pleading standards for motions to dismiss in the discrimination context and a continued reliance on factual arguments that it carries over from the motion to stay and compel portion of the Motion, both of which are improper. Defendant has furthermore misapplied inapposite caselaw to support its arguments.

The American with Disabilities Act of 1990, as amended, 42 U.S.C § 12101, *et seq.* ("ADA") prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring… of employment." 42 U.S.C. § 12112(a). To plead a prima facie case of discrimination under the ADA, a plaintiff must show that: "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability." *Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020). "In order to establish a prima facie case of discrimination for failure to promote (or the similar claim of a failure to hire), a plaintiff must show that: (1) he belongs to a protected class; (2) he applied for a position for which he was qualified; (3) he was rejected despite his qualifications; and (4) the defendant continued to seek applications from other persons with the same qualifications." *Smith v. St. Luke's Roosevelt Hosp.*, 2009 U.S. Dist. LEXIS 69995, at *65-66 (S.D.N.Y. Aug. 11, 2009) (citations omitted, collecting cases).

The New York State Human Rights Law, N.Y. Exec. Law §§ 290, *et seq.* ("NYSHRL") and New York City Administrative Code § 8-101, *et seq.* ("NYCHRL") are analytically distinct from their federal counterparts, in that claims brought under those statutes are more broadly construed than claims asserted under the ADA. *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013). The NYSHRL defines "disability" more broadly than the

ADA and does not require a plaintiff to identify a major life activity that is substantially limited by the impairment. *See Treglia v. Town of Manlius*, 313 F.3d 713, 723-24 (2d Cir. 2002); *Franklin v. Consol. Edison Co. of N.Y., Inc.*, 1999 WL 796170, at *10 (S.D.N.Y. Sept. 30, 1999) (The NYSHRL requires only "an impairment, not an impairment that substantially limits a major life activity"). The remaining requirements to state a prima facie case of discrimination, and retaliation under the NYSHRL are the same as under the ADA. *See, e.g., Lovejoy-Wilson v. NOCO Motor Fuel, Inc*., 263 F.3d 208, 212 n.3 (2d Cir. 2001).

Pursuant to the NYCHRL, "[i]t shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived ... disability, …of any person: … (3) To discriminate against such person in compensation or in terms, conditions or privileges of employment." Moreover, the NYCHRL provides broader protection than its related federal and state statutes. *See Smyth v City of New York*, No. 157294/2017, 2018 WL 4080144, at *1 (N.Y. Cty. 2018); *Romanello v Mesa Sanpaolo, S.p.A*., 22 N.Y.3d 881, 976 N.Y.S.2d 426 (2013). The NYCHRL states that it "shall be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York state civil and human rights laws ... have been so construed." NYCHRL § 8-130.

Furthermore, as a result of the NYSHRL amendment in 2019, the "NYSHRL now aligns with the standards of the [NYCHRL]." *See Wright v. White Plains Hosp. Med Ctr.*, 237 A.D.3d 1143, 1145 (2d Dept. 2025); s*ee also Flanagan v. Girl Scouts of Suffolk Co*., 2025 U.S. App. LEXIS 12747 at *7-8 (2d Cir. May 27, 2025) (stating that "the updated NYSHRL is interpreted 'to align with…the more liberal pleading standard' applicable to the NYCHRL'") (citing *Qorrolli v. Metro. Dental Assocs*., 124 F.4th 115, 123 (2d Cir. 2024) and *Syeed v. Bloomberg L.P*., 41 N.Y.3d 446, 451, 211 N.Y.S.3d 819 (2024)).

However, Defendant's arguments for dismissal misapply the requisite pleading standards that courts have determined to be appropriate for discrimination cases at the motion to dismiss stage.  It is well settled that "[t]o survive a motion to dismiss, an employment discrimination complaint 'must include only a short and plain statement of the claim. . .[that] give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Sorema*, 534 U.S. at 512.  *Accord Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83-84 (2d Cir. 2015) ("At the pleadings stage of the litigation, [plaintiff] was not required to plead a prima facie case of discrimination as contemplated by the *McDonnell Douglas* framework." (citing and quoting *Littlejohn*, 795 F.3d at 305 (2d Cir. 2015) (referring to "the reduced prima facie requirements that arise under McDonnell Douglas in the initial phase of a litigation").

Moreover, the determination as to whether pleaded facts give rise to a plausible inference of discrimination "is a 'flexible [standard] that can be satisfied differently in differing factual scenarios.'" *Howard v. MTA Metro-North Commuter R.R.*, 866 F. Supp. 2d 196, 204 (S.D.N.Y. 2011) (quoting *Chertkova v. Conn. Gen. Life Ins. Co*., 92 F.3d 81, 91 (2d Cir. 1996)); *see also Moore v. Kingsbrook Jewish Med. Ctr.*, 2013 U.S. Dist. LEXIS 107111, at *6 (E.D.N.Y. July 30, 2013) (discussing differing circumstances from which an inference of discrimination can be drawn). Specifically, in the failure to hire context, "[a]n employer's choice of a less qualified employee not from [p]laintiff's protected class raises an inference of discrimination sufficient to establish a prima facie case of discrimination." *Butts v. N.Y. City Dep't of Hous. Pres. & Dev.*, 2007 WL 259937, at *9 (S.D.N.Y. Jan. 29, 2007).

Defendant herein ignores these standards and instead applies a hyper-technical parsing of each and every element of the FAC under an analysis more akin to what a successful discrimination or retaliation claim might be required to adduce at summary judgment. Defendant foists an unrealistic burden upon a would-be discrimination plaintiff, especially in the already evidentiary

challenged "failure to hire" context, to have each and all compelling factual evidence at the ready by the initial pleading stage, without any access to discovery. Defendant would require Plaintiff to possess knowledge and information about, *inter alia*, its own internal hiring processes, communications, subjective knowledge and deliberations, who might have been the decisionmaker in reviewing Plaintiff's candidacy, who within Defendant's organization discussed or had knowledge of or may have communicated such knowledge to others, the precise qualifications of comparator candidates and whether they definitively had any disabilities, none of which is available to the vast majority of discrimination plaintiffs at the early pleadings stage.

In fact, numerous Second Circuit courts have determined that detailed comparator evidence in this context is not only unnecessary to survive a motion to dismiss but a fact-based inquiry more appropriate at the summary judgment stage.[7] *See Pothen v. Stony Brook Univ.*, 211 F. Supp. 3d 486, 495 (E.D.N.Y. 2016) ("'[w]hether two employees are similarly situated . . . presents a question of fact,' rather than a legal question to be resolved on a motion to dismiss. [citation omitted] At the pleading stage, allegations that the plaintiff and comparators worked in the same group and were accountable to the same supervisors, but were subjected to disparate treatment may be sufficient to raise an inference of discrimination (citing and quoting *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 229-30 (2d Cir. 2014) (concluding that plaintiff plausibly alleged he and comparator employees were similarly situated even though he did not plead facts about the comparator employees' job function, experience, qualifications, and rate of pay). *See also Kunik v. N.Y.C. Dep't of Educ.*, 2017 U.S. Dist. LEXIS 164132, at *25-26 (S.D.N.Y. Sep. 29, 2017) ("The allegations … that the Individual Defendants gave non-Jewish employees preferential treatment

---

[7] *See Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills*, 815 F. Supp. 2d 679, 698 (S.D.N.Y. 2011) ("[a]t the motion to dismiss stage, . . . evidence [of similarly situated comparators] is not necessary[,] . . . a court still must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated.").

are quite threadbare, but they suffice to allege a plausible inference of discriminatory intent based on disparate treatment…. identifies her comparators by name, noting that they were part of the same ESL Department…. Although Defendants may ultimately be able to show that Kunik's comparators were not similarly situated … these questions should not be resolved at the pleadings stage.") Similarly, Plaintiff has identified similarly situated albeit less qualified candidates that were hired within the same practice group who were hired instead of Plaintiff who would have been subject to the same supervisors and hiring standards as he would, yet were treated more favorably. *See Brown,* 756 F.3d at 230 ("Brown alleges that he worked in the New Business Development Group with three Japanese employees, two of whom reported to the same supervisor as he did. Drawing all reasonable inferences in Brown's favor, as we must, both Brown and the Japanese employees in the Group are plausibly alleged to be subject to the same performance evaluation and disciplinary standards, and therefore similarly situated in their employment circumstances.")[8]

Comparator evidence is also not a requirement at this stage under Plaintiff's NYCHRL claims. *See Viruet v. City of N.Y.*, 2019 U.S. Dist. LEXIS 75159, at *43-44 (S.D.N.Y. May 3, 2019) ("The defendants argue that the plaintiff's discrimination claim must fail because she does not allege that she was treated differently from any similarly situated comparators."); s*ee also Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008) (pleadings made on information and belief sufficient to satisfy Twombly pleading standard, particularly where "the names and records, if any,

---

[8] *See also Graham v. Long Island R.R.*, 230 F.3d 34, 43 (2d Cir. 2000) ("In deciding whether a prima facie case was established, the district court applied an unduly inflexible standard…. [b]y determining that [comparator employees] were not similarly situated, the trial court erred. Whether these employees were similarly situated presented a material question of fact.").

of persons who were not members of the protected class[] and were more favorably treated . . . is information particularly within [defendant's] knowledge and control").[9]

Defendant's reliance on *Anderson v. City of N.Y.*, 712 F. Supp. 3d 412 (S.D.N.Y. 2024) (Def.'s Brief at 11, Fn6 and 20) to support its argument that the failure to hire Plaintiff could not be due to disability discrimination or perceived discrimination is dissimilar as *Anderson* is not a failure to hire case.

### i. Defendant Raises Factual Arguments from its Motion to Stay and Compel into its Motion to Dismiss

After raising the bar on the standards for factual pleading sufficiency, Defendant compounds their misapplication of law by interjecting its own factual arguments, seemingly carried over from the motion to stay and compel portion of the Motion, to rebut the sufficiency of Plaintiff's claims. Defendant not only requires excessive factual allegations from Plaintiff, it raises its own improper factual defenses which are peculiarly within Defendant's own possession, custody and control and would be almost impossible for **any** discrimination plaintiff to have access to at the pleadings stage, most notably in a failure to hire context. Defendant seeks dismissal of Plaintiff's claims based upon self-serving and self-possessed expressions as to the same sets of facts that are peculiarly within Defendant's own possession. That an employer could avoid culpability from employment discrimination claims by simply asserting a factual defense at the motion to dismiss stage, that its decisionmaker had no knowledge of a plaintiff's protected activity,

---

[9] The same factual incongruities which Defendant relies upon in its motion to stay and compel are present in its cited legal authority as to discrimination/retaliation pleading requirements which it attempts to apply to the FAC. *See Shukla*, 2020 U.S. Dist. LEXIS 104555, at *17 ("'[n]umerous courts within the Second Circuit have granted motions to dismiss disparate treatment claims where the complaint **was entirely devoid of any details** regarding the purported comparators, e.g., who they are, what their positions or responsibilities were at [the company], how their conduct compared to plaintiffs' or how they were treated differently by defendants.'"); *Idlisan v. N.Y.C. Health & Hosps. Corp.*, 2013 U.S. Dist. LEXIS 163151, at *13-15 (S.D.N.Y. Nov. 15, 2013) ("Idlisan has pled **virtually no facts that give rise to an inference** that HHC did not hire him because of his disability.") (emphasis added).

would be fatal to a large swath of employment discrimination plaintiffs. Such "trust us" factually-based arguments are legally impermissible in **any** motion to dismiss analysis, let alone in the discrimination context of a failure to hire case. *See Boykin v*, 521 F.3d at 215 (*see* supra); s*ee also Trachtenberg v. Dep't of Educ*., 937 F. Supp. 2d 460, 471 (S.D.N.Y. 2013) (Plaintiff's "allegations are thin on specifics—both as to how each comparator is similarly situated … and what disparate treatment he or she was subjected to…. the BOE may well be correct that the comparators identified … were either not similarly situated in all material respects, or did not suffer discriminatory treatment, but that is an issue that cannot be resolved on the pleadings.") (citing *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) ("Ordinarily, the question whether two employees are similarly situated is a question of fact for the jury.")).

Many of the factual allegations that comprise much of the arguments in the Motion, were within the Defendant's own peculiar knowledge and could not have been known to Plaintiff, let alone referred to or relied upon and, therefore, cannot remotely satisfy any of the limited exceptions for their inclusion or consideration outside the pleadings in a motion to dismiss. For example, under similar circumstances, the Court in *Rice v. Smithtown Volkswagen*, 321 F. Supp. 3d 375, 383-84 (E.D.N.Y. 2018) concluded that "it appears that the Defendants attached these documents to their motion to dismiss solely for the purpose of refuting facts alleged in the Complaint. Consequently, considering said documents 'would require credibility assessments and weighing of the evidence, which is not appropriate on a motion to dismiss' [citations omitted]… [and] the Court will exclude the additional material and decide the motion on the Complaint alone and the law governing Rule 12(b)(6)" *Id*. at 383-84. (citing *Johnson v. Levy*, 812 F. Supp. 2d 167, 176 (E.D. N.Y. 2011)). As such, the court must exclude the Defendants' insertion of factual arguments from consideration and determine the motion sheerly on the legal application of Rule 12(b)(6) to the FAC, which renders the majority of the dismissal portion of the motion as improper.

Next, the issue of whether one of Plaintiff's former supervisor, Ms. Cantwell made any discriminatory remarks about Plaintiff's disability is irrelevant to the issue here as this is a failure to hire matter and not a wrongful termination matter. Defendant cites to caselaw pertaining to discriminatory termination and the necessity to prove discriminatory remarks by the alleged decision makers. *See* Def.'s Mem. at 13-15 (citing *Shukla*, 2020 U.S. Dist. LEXIS 104555, at *8-9; *Wasserman v. New York City Dept. of Ed.*, 2025 WL 1906978 (S.D.N.Y. July 10, 2025); and *Hall v. Petro Holdings, LLC*, 2019 WL 3945515, at *5 n.7 (D. Conn. Aug. 21, 2019)). The FAC contains sufficient factual support to give rise to an "inference of discrimination," without pleading facts that are beyond Plaintiff's ability to know in the absence of discovery with regard to internal conduct and actions of Defendant's personnel. *See*, *e.g.*, *Gentile v. Touro L. Ctr.*, 2024 U.S. Dist. LEXIS 49687, at *11-12 (E.D.N.Y. Mar. 20, 2024) ("Presently, the Court cannot adequately evaluate the probative nature of Maligore's alleged statement given the lack of a developed record. While, as alleged in the FAC, the final decision maker was not Maligore, but the Dean, the Court cannot determine how influential Maligore may have been in the decision-making process. Likewise, the Court cannot fairly assess the context in which the comment was made or its full content. Consequently, the Court finds it prudent to allow Plaintiff's ADEA claim proceed to discovery."). In another words, it is virtually impossible for a plaintiff in a failure to hire case to know what may have been said or communicated about him in his absence by the employer or the decisionmakers, particularly as it pertains to any discriminatory or retaliatory remarks made as part of the reason to not hire them. However, what is known here is that the decision makers at IDRG, such as Mr. Prager and Ms. Cantwell are aware of Plaintiff's disability or perceived disability and likely know of Plaintiff's previously asserted claim of discriminatory termination and settlement.

Authority cited by Defendant to support their argument that Plaintiff must plead knowledge of discriminatory remark to prove discrimination based on failure to hire are factually inapplicable. (*See* Def. Brief at 14-16) (citing *Wasserman*. 2025 WL 1906978 (S.D.N.Y. July 10, 2025) (a Family Medical Leave Act ("FMLA") interference case rather than a failure to hire case); *Hall*, 2019 WL 3945515 (a case decided at the summary judgment stage pertaining to a discriminatory termination); *C.C. v. Google, LLC*, 2025 WL 1938809, at *4 (S.D.N.Y. July 15, 2025) (another discriminatory termination case); *Fishman v. Off. of Ct. Admin. N.Y. State Cts.*, 2020 WL 1082560 (S.D.N.Y. Mar. 5, 2020) (a non employment related case where the plaintiff alleges that a family court, the judge and other court employees discriminated against him based on his disability by not permitting him to take notes during a court proceeding).

### ii.    Plaintiff is Also Discriminated Against Based on a History of Disability

The ADA protects not just those employees who are actually disabled, that is, employees who have "a physical or mental impairment that substantially limits one or more major life activities," 42 U.S.C. § 12102(1)(A), but also those who are discriminated against because they have "a record of such an impairment" or are "regarded as having such an impairment," *Id*. § 12102. The NYSHR similarly defines a disability as "a physical, mental or medical impairment … which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques **or (b) a record of such an impairment or (c) a condition regarded by others as such an impairment**." N.Y. Exec. Law § 292(21). Under the NYCHRL, a disability is also defined as "any physical, medical, mental or psychological impairment, **or a history or record of such impairment**." N.Y. Admin. Code § 8-102(16)(a). *See Miller v. Taco Bell Corp*., 204 F. Supp. 2d 456, 459-60 (E.D.N.Y. 2002) (Finding that "[e]ven if a Plaintiff is not actually disabled within the meaning of the ADA, he may nonetheless have a claim if he can show a record of an ADA disability…. Thus, even if a plaintiff is not actually substantially

limited in a major life activity, a record reflecting such a limitation is sufficient to establish a disability under the ADA.") Defendant's argument regarding Plaintiff's statements about his surgical treatment and current status of his disability is not even remotely dispositive on this issue as he has alleged more than sufficient facts to plausibly allege that Defendant both regarded him as having a disability and also had corporate knowledge (if not actual) that he had a history and record of same based upon not only his disability leave but also subsequent protected activity in asserting discrimination claims against Defendant (which were ultimately settled).

C.    **Plaintiff Has a Prima Facie Retaliation Case**

To establish a prima facie case of retaliation under the ADA, a plaintiff "must show that he engaged in a protected activity, that he suffered an adverse employment action, and that a causal connection exists between that protected activity and the adverse employment action." *Ibela v. Allied Universal*, 2022 U.S. App. LEXIS 12155, at *2 (2d Cir. May 5, 2022) (quoting *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 72-73 (2d Cir. 2019). "A plaintiff bears only a minimal burden in making this prima facie showing." *Perez v. City of New York*, 843 F. App'x 406, 407 (2d Cir. 2021) (citing *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010); and *Treglia*, 313 F.3d at 719.

Defendant applies the same tactics in attempting to refute Plaintiff's retaliation claims, even going so far to allege that Plaintiff has failed to plead facts that he was treated "less well" (see Def.'s Mem. at 18 and 20) than other similarly situated comparator candidates -- an absurd overreach. To state what should be obvious to most – that discriminating against a job applicant because of impermissible factors such as their protected class status in the favor of other candidates outside that group would, by any measure, far exceed the NYCHRL[10] minimal threshold for actionable treatment that is "less well" under the City law. *See, e.g., Brown v. N.Y.C. Dep't of*

---

[10] As stated *supra*, the NYSHRL standard now aligns with the NYCHRL.

*Educ.*, 2021 U.S. Dist. LEXIS 181382, at *18 (S.D.N.Y. Aug. 31, 2021) ("In terms of the third element, as previously noted, a refusal to hire qualifies as an adverse employment action.")

Defendant wrongly asserts that Plaintiff has failed to allege causation due to his failure to identify the individual that engaged in the retaliatory action when Plaintiff has in fact pleaded that "the hiring decision makers were likely the same individuals that had prior notice and knowledge of Plaintiff's medical condition and also the same ones who contributed to the decision to terminate Plaintiff." (FAC ¶ 68) These are the same individuals that would have been investigated or interviewed, thus have knowledge of Plaintiff's prior discrimination claim after his termination. Without access to discovery at this stage, and as often the case in a failure to hire matter with a large employer, it is simply unreasonable or impossible for a job applicant to know the exact individual(s) that made the decision within a group. Plaintiff has sufficiently identified a group of decision makers that would have made the decision to not to rehire him. In this light, Plaintiff has more than established a causal connection to the discriminatory and retaliatory alleged herein.

Defendant's arguments appear to blur the line between knowledge of Plaintiff's protected activity and causal connection[11] but, there is overlap between these two prongs which is applicable here. For example, it is difficult to fathom that Plaintiff's employment history with Defendant, including his protected activity both in his disability leave and subsequent opposition to discrimination which resulted in a settlement, was not known as "corporate knowledge" within the firm and particularly within the IDRG where Plaintiff worked and sought to be hired by which certainly can spill over into the causal connection element. *See Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000) ("Neither this nor any other circuit has ever held that, to satisfy the

---

[11] *See* Def.'s Mem. at 21-24 ("the FAC contains no allegations whatsoever supporting that Legal Recruiting knew of Plaintiff's alleged protected activity or acted upon the orders of a superior with such knowledge. This failure means that Plaintiff cannot establish a causal connection, and therefore fails to adequately plead a prima facie case of retaliation under the ADA, NYSHRL, and NYCHRL.")

knowledge requirement, anything more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity.") (citing *Reed v. A.W. Lawrence & Co., Inc*., 95 F.3d 1170, 1178 (2d Cir. 1996) (knowledge requirement "easily proved" because the corporate entity was aware of plaintiff's complaints); *Alston v. New York City Transit Auth*., 14 F. Supp. 2d 308, 311 (S.D.N.Y. 1998) ("[P]laintiff need not show that individual decision-makers within the NYCTA knew that she had filed . . . . [an] EEOC complaint."). It is certainly more than "plausible" that knowledge of Plaintiff's protected activity was known by Ms. Cantwell, Mr. Prager, the practice group and the recruiting department which also lends additional support to Plaintiff's other allegations which establish a sufficient causal connection here.

Defendant attempts to buttress their assertion by introducing an outside fact and by blaming the decision to not to rehire on an alleged individual in its legal recruiting department. Defendant has annexed apparently cherry-picked email correspondence, including an internal email purportedly between Mr. Tahbaz and a Sandra E. Herbst ("Ms. Herbst") showing that Mr. Tahbaz informing her of Plaintiff's application. (*See* Tahbaz Decl. Ex. C) However, not only is this an introduction of an outside fact (and document completely outside the pleading), but this raises factual questions which would require discovery as to, for example, the full context of what other correspondence or conversation occurred within Debevoise and what, if any, steps were taken by Ms. Herbst to try to match Plaintiff's qualifications. It is also unknown to Plaintiff who else Mr. Tahbaz may have communicated or corresponded with pertaining to his application.[12]

Defendant furthermore cites to general proposition caselaw that are factually inapposite from herein. *See generally* Def. Memo of Law at 21-24 (citations omitted). Defendant's reliance

---

[12] It is notable that Mr. Tahbaz is also likely a relevant fact witness as he, as General Counsel of Defendant, negotiated and signed the Agreement on its behalf. (See Tahbaz Decl. Ex. A) As such, he may very well have an interest and a role in not wanting Plaintiff to be hired as a result of his protected activity.

of *Wang v. Palmisano*, 157 F. Supp. 3d 306 (S.D.N.Y. 2016) is inapplicable as the *pro se* plaintiff Wang failed to plead whether he started applying to be hired before or after he engaged in a protected activity and there was uncertainty as to whether the employer defendant was even aware that he engaged in protected activity when he first applied. 157 F. Supp. 3d at 330-31. In *Riddle v. Citigroup*, 2014 U.S. LEXIS 85406 (S.D.N.Y. May 20, 2014), the matter was dismissed due to the *pro se* plaintiff's failure to even identify whether she was qualified for the position which she was applying for. 2014 U.S. LEXIS 85406, at *12-13. This differs from the current matter as the date of Plaintiff's application for a position in which he knows he was qualified for after he engaged in a protected activity of asserting discriminatory termination claim against Defendant resulting in the private settlement.[13] *Diaz v. City Univ. of N.Y.*, 2015 WL 5577905, at *12 (S.D.N.Y. Sept. 22, 2015) is likewise inapplicable as the matter relates to a Plaintiff who was alleging a failure a to obtain a position at another organization or institution due to his college professor's unwillingness to write him a letter of recommendation.

**D.     Plaintiff Should be Provided Leave to Amend the First Amended Complaint**

Should the Court somehow determine that Defendant's overreaching and misapplied pleading standards and factual submissions require dismissal of **any** of Plaintiff's claims herein, the Court should permit Plaintiff to amend it's pleading under the liberal applicable standards for so doing. "It is the usual practice upon granting a motion to dismiss to allow leave to replead."

---

[13] Furthermore, Plaintiff alleges his qualifications for the positions which he was applying for. It should also be noted that *Riddle*, also provides that "on a Rule 12(b)(6) motion, it is not enough to argue that a different set of human resources people negates an issue of discrimination." 2014 U.S. LEXIS 85406 at *14 fn. 6. This is contrary to Defendant's argument that a Plaintiff must plead that the very people who discriminated against him or knew of his prior protected activity must also be the very same people who retaliated against him (or directed them to).

*Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").[14]

While "[l]eave may be denied for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (citation omitted), none of those factors are present here. Should the Court find Plaintiff's FAC to be insufficiently pleaded in any respect that would require dismissal, he respectfully requests that the Court permit him to amend and remedy any such defects as the failure to do so here would elevate form over substance and deny Plaintiff his rightful access to judicial remedy for his federal, state and city law claims.

## CONCLUSION

Based on the foregoing, the accompanying Declaration of William Li, Esq, and the exhibits attached thereto, the Court should deny Defendant's Motion in its entirety and: i) maintain jurisdiction over Plaintiff's claims herein; ii) deny Defendant's motion to dismiss in its entirety; and iii)  award Plaintiff any further and other relief to Plaintiff that the Court deems just and appropriate.

Dated:    November 14, 2025

**WILLIAM K LI LAW, PLLC**
By: */s/ William Li*
William Li
535 Fifth Avenue, 4th Floor
New York, New York 10017
T: (212) 380-8198
wli@wlilaw.com
*Counsel for Plaintiff*

---

[14] *See also Novick v. Vill. of Wappingers Falls*, 376 F. Supp. 3d 318, 344 (S.D.N.Y. 2019) ("The claims that are dismissed are dismissed without prejudice as this is the first adjudication on Defendant's Motion to Dismiss. (citing *Rennalls v. Alfredo*, 2015 U.S. Dist. LEXIS 133641, at *5 n.6 (S.D.N.Y. Sept. 30, 2015) ("[The] Court will afford Plaintiff an opportunity to amend if, after reviewing this Order … he still believes that he can plausibly state claims against Defendant[]."))