USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/23/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RAIMUNDO ANTONIO VIVES LOPEZ,

Plaintiff,

-against-

DEBEVOISE & PLIMPTON LLP,

Defendant.

1:25-cv-02879-MKV

**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAY ACTION AND MOTION TO SEAL**

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff Raimundo Antonio Vives Lopez brings this action against his former employer Debevoise & Plimpton LLP ("Defendant") alleging disability discrimination and retaliation under the Americans with Disabilities Act of 1990, 42 U.S.C §§ 12101 *et seq.* ("ADA"), the New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq*. ("NYSHRL"), and the New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 *et seq*. ("NYCHRL"). *See* First Amended Complaint ("Am. Compl.") ¶¶ 1, 70-109 [ECF No. 20]. Before the Court is Defendant's motion to compel arbitration and stay this action under the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq*. (the "FAA"), or, in the alternative, to dismiss Plaintiff's action in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). [ECF No. 25]. In support, Defendant has filed a memorandum of law ("Mem."), [ECF No. 26], and a Declaration of Christopher K. Tahbaz, Esq., ("Tahbaz Decl.") with attached exhibits, [ECF No. 27].[1] Plaintiff has filed an opposition ("Opp'n"), [ECF No. 33], supported by a Declaration of William Li, Esq., with attached exhibits, [ECF No. 34]. In response, Defendant has filed a reply ("Reply"). [ECF No. 35]. For the reasons discussed below,

[1] Select portions of the exhibits attached to the Declaration of Christopher K. Tahbaz, Esq., were conditionally filed under seal, and Defendant has filed an application to maintain those records under seal as discussed below. *See* Letter Motion to Seal [ECF No. 28].

Defendant's motion to compel arbitration is GRANTED and this action is STAYED pending arbitration of Plaintiff's claims.

## BACKGROUND

Defendant is "an international law firm" headquartered in New York, New York. Am. Compl. ¶¶ 23-24. Plaintiff was hired by Defendant as a "Second Year Litigation Associate attorney" to work out of its New York City headquarters in June 2021. *Id* ¶ 25. In September 2022, Plaintiff "chose his major specialization and was accepted to work exclusively" in Defendant's International Dispute Resolution group ("IDRG"). *Id*. ¶¶ 29-30. On October 14, 2022, Plaintiff was terminated from his employment following a period of medical leave from September 23, 2022 until about October 10, 2022 taken in connection with a surgery for a chronic medical condition. *Id*. ¶¶ 34-40, 45.

Following Plaintiff's termination, on or about March 27, 2023, Plaintiff and Defendant entered into a confidential settlement agreement and release ("Settlement Agreement") for "any possible cause of actions or violations arising out of facts and events that occurred up to the date of execution of the Settlement Agreement by Plaintiff and without [Defendant] admitting to any wrongdoing." *Id*. ¶¶ 48-49. The Settlement Agreement included an arbitration clause through which the parties agreed to arbitrate "[a]ny controversy or claim arising out of or under or relating to this Agreement," as well as "any other dispute" between the parties. Tahbaz Decl., Ex. A at 4-5, § 7 ("Arbitration Clause" or "Arb. Clause") [ECF No. 29-1].

In June 2023, Plaintiff submitted an application to Defendant's legal recruiting team via email correspondence with Partner Christopher Tahbaz, Tahbaz Decl., Ex. B at 1-2, seeking to be "reinstated or rehired for the original or a substantially similar position of Associate at IDRG" in Defendant's New York City office. Am. Compl. ¶ 52. Plaintiff's application was rejected by

Defendant on or about July 2, 2023. *Id.* ¶ 61. Plaintiff subsequently commenced this action against Defendant, alleging discrimination and retaliation claims under the ADA, NYSHRL, and NYCHRL, specifically asserting that "there simply could not have been any reason for not rehiring or reinstating Plaintiff" other than "discriminatory animus against Plaintiff's medical condition" or "retaliation for having previously asserted and negotiated the Settlement Agreement with [Defendant] pertaining to [Plaintiff's] termination." *Id.* ¶¶ 68, 70-109.

Plaintiff filed his initial complaint on April 7, 2025, [ECF No. 1], and after the Court granted Plaintiff leave to amend his complaint in response to arguments raised in Defendant's pre-motion letter, Plaintiff filed the operative complaint on October 1, 2025. [ECF No. 20]. Before the Court is Defendant's fully briefed motion to compel arbitration and stay the action or, in the alternative, to dismiss Plaintiff's action in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). [ECF No. 25].

## LEGAL STANDARD

The FAA "is an expression of a strong federal policy favoring arbitration as an alternative means of dispute resolution." *Ross v. American Exp. Co.*, 547 F.3d 137, 142 (2d Cir. 2008) (citation modified). Section 2 of the FAA provides that arbitration provisions in written contracts "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Section 4 permits a party to petition a federal district court "for an order directing arbitration proceed in the manner provided for" in an arbitration agreement. 9 U.S.C. § 4. The FAA "requires the federal courts to enforce arbitration agreements, reflecting Congress' recognition that arbitration is to be encouraged as a means of reducing the costs and delays associated with litigation." *Vera v. Saks & Co.*, 335 F.3d 109, 116 (2d Cir. 2003) (citation modified); *see also Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 50 (2d

Cir. 2022) ("Where parties are bound to an arbitration agreement, courts are instructed to favor arbitration as a form of dispute resolution.").

Before compelling arbitration, courts in this Circuit must determine two threshold issues: (1) whether the parties agreed to arbitrate, and (2) the scope of that agreement. *See In re American Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011). The initial burden of demonstrating that an agreement to arbitrate exists is on the party seeking to compel arbitration. *See Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101-02 (2d Cir. 2022). The moving party need not "show initially that the agreement would be *enforceable,* merely that one existed." *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010) (summary order) (emphasis in original). If the movant overcomes its initial burden, the Court must determine whether the second issue—the scope of the agreement to arbitrate—has been delegated to the arbitrator or is for the Court to decide. *See In re American Exp.*, 672 F.3d at 128.

While the question of "whether the particular dispute is subject to an arbitration agreement is typically an issue for judicial determination," an exception to that general rule applies if the arbitration agreement "clearly and unmistakably elects to have the resolution of the arbitrability of the dispute decided by the arbitrator." *Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184, 191 (2d Cir. 2019) (citation modified). "[W]here the arbitration agreement is broad and expresses the intent to arbitrate all aspects of all disputes, this—coupled with incorporation of rules that expressly empower an arbitrator to decide issues of arbitrability—constitutes clear and unmistakable evidence of the parties' intent to delegate the question of arbitrability to the arbitrator." *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 318-19 (2d Cir. 2021). Should the Court find that the issue of arbitrability is for its own determination, at the second step, "the party resisting

arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

A motion to compel arbitration is governed by a standard similar to that applicable for a motion for summary judgment, and as such, the Court must draw all reasonable inferences in favor of the non-moving party. *See Barrows*, 36 F.4th at 49 (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016)) (citation modified). The governing standard requires a court to consider all relevant, admissible evidence submitted by the parties. *See Nicosia*, 834 F.3d at 229.

## DISCUSSION

### I. Motion to Dismiss or to Stay in Favor of Arbitration

The Court first considers whether Defendant has met its burden of showing, at the initial step of the inquiry, that "the parties have entered into a valid agreement to arbitrate." *In re American Exp.*, 672 F.3d at 128; *see also Zachman*, 49 F.4th at 101-02. The Court finds that Defendant has met its burden and that the parties have entered into a valid agreement to arbitrate. Despite the parties' limited briefing on the question of "who—the court or the arbitrator—properly decides the issue" of scope, *In re American Exp.*, 672 F.3d at 128, the Court finds that the arbitration agreement "clearly and unmistakably" delegates all issues of arbitrability to the arbitrator. *Bucsek*, 919 F.3d at 191. Accordingly, the Court declines to decide at the second step of its inquiry whether the scope of the arbitration agreement encompasses the present dispute. This case must therefore be stayed pending arbitration of Plaintiff's claims.

#### *A. The Parties Entered into a Valid Agreement to Arbitrate*

The parties do not dispute that they entered into a Settlement Agreement which included an agreement to arbitrate disputes. *See* Mem. at 1, 5-7; Opp'n at 6-11. Section 7 of the Settlement Agreement, titled "Agreement to Arbitrate," states, in relevant part:

> Any controversy or claim arising out of or under or relating to this Agreement or the breach or alleged breach thereof, and any other dispute between the Parties, shall, to the extent permitted by law, be asserted and resolved solely by binding, confidential arbitration before a sole arbitrator in New York City, New York, administered by the American Arbitration Association under its Employment Arbitration Rules and Mediation Procedures.

Arb. Clause [ECF No. 29-1].

By Plaintiff's own allegations, the parties negotiated and entered into the Settlement Agreement while represented by their respective counsel on or about March 27, 2023. Am. Compl. ¶¶ 48-49. In executing the Agreement, Plaintiff acknowledged that he "agree[d] to abide by all of the terms and conditions contained in [the] Agreement," including the agreement to arbitrate quoted above. Tahbaz Decl., Ex. A at 5-6, § 10 [ECF No. 29-1].

Plaintiff advances a thinly supported argument that the Arbitration Clause is invalid for "lack of consideration and mutual assent." Opp'n at 8-11. This argument is plainly foreclosed by the fact that, by virtue of entering the Settlement Agreement, Plaintiff agreed to be bound by the Arbitration Clause in consideration of the various mutual promises made in the Agreement, Tahbaz Decl. Ex. A at 1, 5-6, § 10, and thus "manifest[ed] the required mutual assent required to create a binding Arbitration Agreement under New York law." *Awad v. Extended Nursing Pers.*, No. 1:24-cv-02117-MKV, 2025 WL 753865, at *4 (S.D.N.Y. Mar. 10, 2025); *see also Stonehill Cap. Mgmt., LLC v. Bank of the West*, 28 N.Y.3d 439, 448-49, 68 N.E.3d 683, 45 N.Y.S.3d 864 (2016). Plaintiff's unfounded and frankly confusing argument that consideration must be specifically apportioned to the Arbitration Clause in the Settlement Agreement to be valid is similarly unconvincing. *See Lefkowitz v. Reissman*, No. 12-cv-8703 (RA), 2014 WL 925410, at *9 (S.D.N.Y. Mar. 7, 2014) ("[I]f there is consideration for the entire agreement that is sufficient; the consideration supports the arbitration option, as it does every other obligation in the agreement.") (quoting *Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 451 (2d Cir. 1995)).

Given that Plaintiff does not dispute that he executed the Settlement Agreement, through which he agreed to be bound by an agreement to arbitrate, the Court finds that the Defendant has met its initial burden of showing that the parties entered into a valid agreement to arbitrate.

***B. The Arbitration Clause Delegates Issues of Arbitrability to the Arbitrator***

If the movant overcomes their initial burden of showing that the parties entered into a valid agreement to arbitrate, before moving forward to address the second inquiry—the scope of the arbitration agreement—the Court must also determine whether the Court or the arbitrator properly decides the issue. *See In re American Exp.*, 672 F.3d at 128. As discussed above, the resolution of "whether the dispute at issue comes within the scope of the arbitration agreement," *id.*, is reserved for the Court *unless* the agreement "clearly and unmistakably elects to have the resolution of the arbitrability of the dispute decided by the arbitrator." *Bucsek*, 919 F.3d at 191. The Second Circuit has instructed that broad language in an arbitration agreement reflecting an intent to arbitrate *all* disputes, coupled with the incorporation of rules empowering an arbitrator to decide issues of arbitrability, constitutes clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator. *DDK Hotels*, 6 F.4th at 318-19.

Neither party adequately addresses the question of whether arbitrability is best resolved by the Court or by the arbitrator. Instead of addressing this threshold issue, which must come "[b]efore addressing the second inquiry" of scope, *In re American Exp.*, 672 F.3d at 128, both parties prematurely focus on why the dispute at hand is or is not arbitrable. *See* Mem. at 7-10; Opp'n at 6-11; Reply at 1-5. These disputes cannot be resolved, however, before the Court decides whether such questions properly belong with the Court or with an arbitrator. *See In re American Exp.*, 672 F.3d at 128. In its Reply, Defendant, in a footnote citing the Second Circuit's *DDK Hotels* decision, argues that "[t]o the extent this Court determines that the arbitrator should decide

questions of enforceability of the Arbitration [Clause], the Court would still compel arbitration and have the arbitrator decide the issues the Plaintiff raises in his opposition." Reply at 5 n.2. Here, the resolution of the scope of the agreement to arbitrate is properly reserved for the arbitrator because the Arbitration Clause "clearly and unmistakably" manifests the parties' intent to do so. *Bucsek*, 919 F.3d at 191. As such, the Court declines to decide the issue of arbitrability of the present dispute.

First, the Arbitration Clause incorporates the dispute resolution rules of the AAA then in effect. *See* Arb. Clause. These rules state that "[t]he arbitrator shall have the power to rule on their own jurisdiction, including any objections with respect to the existence, *scope*, or validity of the arbitration agreement *or the arbitrability of any claim or counterclaim*." AAA Employment Arbitration Rules & Mediation Procedures, Rule 7(a) (May 1, 2025) (emphasis added). The Second Circuit has repeatedly found that this exact language "explicitly empower[s] an arbitrator to resolve questions of arbitrability." *See, e.g., DDK Hotels*, 6 F.4th at 318; *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005).

Second, the delegation in the Arbitration Clause is broad and plainly manifests an intent to arbitrate all aspects of all disputes. The Arbitration Clause here is sweeping and provides that "[a]ny" disputes between the parties "arising out of or under or relating to" the Settlement Agreement and "any other dispute between the Parties shall" be "asserted and resolved solely by binding, confidential arbitration." Arb. Clause 4-5, § 7. Courts in this district have found such broad language to constitute clear and unmistakable evidence of an agreement to delegate arbitrability to the arbitrators. *See, e.g., Indian Harbor Ins. Co. v. Build Group, Inc.*, No. 24-cv-4887 (LAP), 2025 WL 770049, at *4-5 (S.D.N.Y. Mar. 11, 2025) (concluding that "broad language" of agreement that provided for arbitration of "[a]ny dispute . . . arising under, out of, in

connection with or in relation to" the policy constituted intent to delegate issue of arbitrability); *DiTella v. TransUnion, LLC*, No. 23-CV-11028 (KPF), 2024 WL 3594567, at *7 (S.D.N.Y. July 31, 2024).

Where, as here, a contract between the parties delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract, "even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68, 71 (2019); *see also Micheli & Shel, LLC v. Grubhub Inc.*, 588 F. Supp. 3d 483, 490 (S.D.N.Y. 2022) ("[T]he Supreme Court has repeatedly held that courts must analyze the validity of a delegation provision on its own terms, without regard to whether the underlying dispute is subject to arbitration."); *accord. Hidalgo v. Amateur Athletic Union of United States, Inc.*, 468 F. Supp. 3d 646, 661 (S.D.N.Y. 2020). Accordingly, because the parties have entered into a valid agreement to arbitrate and the Arbitration Clause delegates questions of arbitrability of all disputes to the arbitrator, the Court must refer this matter to arbitration. *See* 9 U.S.C. § 3.

### *C. Plaintiff's Arguments Do Not Convince the Court to Determine the Arbitrability of this Dispute*

Even if the Court were to find that the issue of arbitrability was for its own determination, Plaintiff fails to meets his burden of proving that the current claims are unsuitable for arbitration.[2] *See Green Tree*, 531 U.S at 91. Apart from Plaintiff's failed argument that the Arbitration Clause is invalid for "lack of consideration and mutual assent" discussed above, Plaintiff advances only

[2] Even though the Court reserves questions of arbitrability to the arbitrator, and makes no decisions on such issues here, the Court discusses these questions in an abundance of caution given the parties' slim briefing on the issue of who—the Court or the arbitrator—should decide the scope of the agreement to arbitrate. *See Cloney's Pharmacy, Inc. v. Wellpartner, Inc.*, No. 23-cv-10088-MKV, 2024 WL 4349291, at *7-12 (S.D.N.Y. Sept. 30, 2024) (discussing at length plaintiff's arguments "as to why the Court should not refer this matter, including any issues concerning arbitrability to arbitration" despite reserving the resolution of such disputes to an arbitrator).

one other similarly unconvincing argument against Defendant's motion to compel arbitration. *See* Opp'n at 6-11.

Plaintiff argues that the Arbitration Clause is not enforceable because it constitutes a so-called "infinite arbitration clause" that "has been rejected by courts in this and other Circuits." Opp'n at 6. As Plaintiff correctly cites, while the Second Circuit has not directly addressed infinite arbitration clauses, district courts in this Circuit have found that arbitration clauses which would require the arbitration of claims without any "nexus" to the agreement containing the clause are not enforceable as a matter of contract formation or unconscionability. *See, e.g., Davitashvili v. Grubhub Inc.*, No. 20-cv-3000 (LAK), 2023 WL 2537777, at *10-11 (S.D.N.Y. Mar. 16, 2023) *aff'd in part, rev'd in part and remanded*, 131 F.4th 109 (2d Cir. 2025); *McFarlane v. Altice USA, Inc.*, 524 F. Supp. 3d 264, 275-77 (S.D.N.Y. 2021). Plaintiff argues that, because (i) the Settlement Agreement does not contain a "no-rehire" provision, and (ii) Plaintiff's claims arise from events that occurred after the execution of the agreement, the claims lack a nexus to the agreement and the Arbitration Clause is therefore unenforceable as an infinite arbitration clause. *See* Opp'n 6-8. This argument fails.

Unlike the situations in both *Davitashvili* and *McFarlane*, Plaintiff's underlying claims, which arise from his request for reinstatement to the same position from which he was discharged, do have a direct nexus to the Settlement Agreement encompassing the Arbitration Clause. As Defendant's Reply and Plaintiff's own allegations make clear, Plaintiff's reinstatement request could not have occurred but for the termination of Plaintiff's prior employment, which resulted in the Settlement Agreement. *See* Reply at 2; Am. Compl. ¶ 45-68; *cf. Davitashvili*, 2023 WL 2537777, at *10 (declining to enforce arbitration clause in a form contract agreement where plaintiff's claims were "completely unrelated to their use of defendant's platforms); *McFarlane.*,

524 F. Supp. 3d at 277-78 (noting hypothetical situations not applicable here that would cause absurd results if an arbitration agreement were enforced by its literal terms). All of Plaintiff's claims thus necessarily have a direct nexus to the Settlement Agreement, notwithstanding that they arose after the execution of the Agreement. *See Barrios-Contreras v. Big Fish Ent. LLC*, No. 23-cv-5821 (JGLC) (JLC), 2024 WL 3435854, at *4 (S.D.N.Y. July 17, 2024), *report and recommendation adopted*, No. 23-cv-5821 (JGLC), 2024 WL 3834829 (S.D.N.Y. Aug. 15, 2024) (finding that plaintiff's claims, which arose from events after her termination, were covered by an arbitration agreement because they "fundamentally ar[o]se" out of her employment). Manifestly, Plaintiff's reinstatement request would not have occurred but for his discharge which gave rise to the Settlement Agreement.

Plaintiff's cited authority in support of his infinite arbitration clause argument is largely irrelevant to the issue at hand, or lends support to opposite conclusions from his proffered reasoning. *See* Opp'n at 7. As Defendant correctly points out, the majority of Plaintiff's support derives from cases outside of the employment context or where the plaintiffs' claims were *wholly* unrelated to the agreements. *See, e.g., McFarlane.*, 524 F. Supp. 3d at 268, 273, 277, 279 (holding that an arbitration provision pertaining to a cable service agreement does not apply to current and former employees' underlying claims in negligence, breach of contract, and statutory disputes "to the extent that they lack a nexus" to the larger agreement); *Wexler v. AT & T Corp.*, 211 F. Supp. 3d 500, 501-02, 504-05 (E.D.N.Y. 2016) (holding that an arbitration provision pertaining to a telephone service agreement is unenforceable "whether framed in terms of unconscionability or contract formation" where the underlying claim arose out of an alleged statutory violation for unsolicited messages under the Telephone Consumer Protection Act that had no relation to the service agreement); *Davitashvili*, 2023 WL 2537777 at *10-11 (holding that arbitration provisions

pertaining to a "Terms of Use" agreement are unenforceable "as a matter of either contract formation or unconscionability" and "to the extent they lack any nexus to the underlying contracts" where the underlying claims arise out of alleged antitrust violations). Moreover, Plaintiff's cited authority for his assertion that "[c]ourts in this Circuit agree in finding infinite arbitration clauses to be unenforceable," actually favors Defendant's argument in support of arbitration. Opp'n at 7 (citing *Vinagray v. Experian Info. Sols., Inc.*, No. 20-cv-715 (KAM) (RML), 2021 WL 861606, at *6 (E.D.N.Y. Mar. 8, 2021)). In *Vinagray*, the district court rejected the plaintiff's argument that an arbitration agreement was overly broad and thus unconscionable in an opinion granting the defendant's motion to compel arbitration. *See id.*

To find otherwise on this point would render the agreement to arbitrate meaningless. If the Court were to accept Plaintiff's claims as unrelated to the larger Settlement Agreement, it would grant employees like Plaintiff free reign to simply nullify such agreements by arguing for reinstatement. But such an outcome would defy the sound logic of finding that Plaintiff's reinstatement request necessarily arose out of his discharge, which gave rise to the larger Settlement Agreement between the parties. Accepting Plaintiff's infinite arbitration clause argument in this context would also render the agreement to arbitrate not mutually enforceable, since Plaintiff alone could nullify the parties' agreement.

***D. The Case Is Stayed Pending Arbitration***

The sole matter remaining for the Court's determination with respect to the impact of the Arbitration Clause is whether to dismiss, stay, or transfer the case in favor of arbitration. The FAA requires a district court, "on application of one of the parties," to stay an action "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration." 9 U.S.C. § 3. The Second Circuit has held that "the text, structure, and underlying policy of the FAA mandate

a stay of proceedings when all of the claims in an action have been referred to arbitration *and a stay requested*." *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015) (emphasis added).

Here, Defendant requests a stay of this action under the FAA, or, in the alternative, to dismiss Plaintiff's action in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). For the foregoing reasons, the Court stays all proceedings in this action pending arbitration and does not reach Defendant's request to dismiss Plaintiff's action pursuant to Rule 12(b)(6).

**E. Motion to Seal**

Also before the Court is Defendant's letter motion to seal portions of the Settlement Agreement that were irrelevant to the motion before the Court. *See* Letter Motion to Seal [ECF No. 28].[3] Plaintiff has filed a Letter Response in Opposition to Defendant's motion, [ECF No. 31], to which Defendant has filed a Letter Reply, [ECF No. 32]. In support of its motion to compel arbitration, Defendant relies only on a small portion of the Settlement Agreement. *See* Mem. at 3-4, 6, 10; Letter Motion to Seal at 2. Specifically, Defendant relies only on Section 7 ("Agreement to Arbitrate") which outlines the parties' agreement to arbitrate disputes related to the Agreement, a "Whereas" clause stating that the parties agreed to settle any and all disputes related to Plaintiff's employment, Section 3 ("Confidentiality") which states that the parties mutually agree to treat the Agreement as strictly confidential, Section 11 ("Miscellaneous") which state that the Agreement is governed by New York law, and the signature page showing that the parties signed the Agreement. *See* Mem. at 3-4, 6, 10. The aforementioned provisions were publicly filed with the motion to compel arbitration, *see* Tahbaz Decl. [ECF No. 27], and Defendant now seeks to redact

[3] Certain of the attached exhibits separately redact Plaintiff's personal email address and phone number to protect his privacy. These redactions are appropriate. *See In re American Realty Cap. Props., Inc. Litig.*, No. 15-cv-307 (AKH), 2019 WL 11863704, at *1 (S.D.N.Y. Mar. 25, 2019) (noting that presumption of public access may be rebutted to protect privacy interests "including by redacting certain non-relevant personal identifying information."); *see also Mark v. Gawker Media LLC*, No. 13-cv-4347 (AJN), 2015 WL 7288641, at *2 (S.D.N.Y. Nov. 16, 2015) (granting request to redact "email addresses, telephone numbers, and individuals' names").

only the portions of the Settlement Agreement which are irrelevant to their motion to compel arbitration. *See* Letter Motion to Seal at 2. For the reasons discussed below, Defendant's motion to seal is GRANTED.

In assessing whether sealing is appropriate, the Court considers: (1) whether the documents at issue are "judicial documents"; (2) if so, the weight of the presumption of public access attaching to any such document; and (3) whether any countervailing factors outweigh the right of public access. *See, e.g., In re IBM Arb. Agreement Litig.*, 76 F.4th 74, 85 (2d Cir. 2023); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006).

First, although there is a presumption of public access to judicial documents, "for a court filing to be classified as a judicial document, it must be relevant to the performance of the judicial function and useful in the judicial process." *Olson v. Major League Baseball*, 29 F.4th 59, 87 (2d Cir. 2022) (citation modified). Here, the portions of the Settlement Agreement which Defendant seeks to redact are irrelevant to the Court's performance of its judicial function in determining whether Plaintiff should be compelled to arbitrate his disputes. In deciding the motion to compel arbitration, the Court relies only upon the limited provisions cited by Defendant and listed above, all of which have already been publicly filed. *See* Tahbaz Decl. [ECF No. 29].

Second, although he now opposes the motion to seal, Plaintiff specifically stipulated in the Settlement Agreement that it be confidential. *See* Tahbaz Decl. Ex. A at 3, § 3 [ECF No. 29-1]. Even if the full Agreement were properly classified as a judicial document, there is a countervailing public interest in fostering settlement which counsels the Court to seal select portions of the Settlement Agreement. *See Gambale v. Deutsche Bank AG*, 377 F.3d 133, 143 (2d Cir. 2004) ("honoring the parties' express wish for confidentiality may facilitate settlement, which courts are bound to encourage."); *U.S. v. Glen Falls Newspapers, Inc.*, 160 F.3d 853, 857 (2d Cir. 1998)

(noting that "the public has a strong interest in settlement" in approving the sealing of certain settlement documents). In light of this strong public interest in settlement, courts in this district have habitually granted motions to seal portions of settlement agreements. *See Richmond v. Montefiore Med. Ctr.*, No. 2-cv-8700 (PGG), 2023 WL 6211978, at *8 (S.D.N.Y. Sept. 25, 2023) (granting motion to seal settlement agreement and settlement communications); *Atl. Specialty Ins. Co. v. Royal All. Assocs., Inc.*, No. 23-cv-9555 (JGLC), 2023 WL 8600548, at *2 (S.D.N.Y. Dec. 12, 2023) (holding that "confidential information contained in settlement agreements . . . may be properly redacted"); *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-mc-2543 (JMF), 2016 WL 1317975, at *2 (S.D.N.Y. Mar. 2, 2016) (stating that "[t]he Second Circuit has repeatedly affirmed the importance of settlement confidentiality in light of the public interest in promoting settlement" and then sealing settlement documents).

The Court follows in this common district practice and finds that a strong countervailing public interest in fostering settlement is present here. Accordingly, the portions of the Settlement Agreement irrelevant to the judicial process in this matter may be properly sealed, and Defendant's letter motion to seal is therefore GRANTED.

## CONCLUSION

For the foregoing reasons, Defendant's motion to compel arbitration is GRANTED and this case is STAYED pending arbitration. Accordingly, the Court does not reach Defendant's alternative motion to dismiss the complaint pursuant to Rule 12(b)(6). Defendant's letter motion to seal portions of the Settlement Agreement is also GRANTED and the relevant documents will remain under seal until further order from the Court.

The Parties are directed to file a letter updating the Court on the status of the arbitration in 60 days, provide further update every 60 days, and advise the Court in writing of the outcome of the arbitration within three business days of its completion.

The Clerk of the Court is respectfully directed to close the motions at ECF No. 25 and ECF No. 28 and stay the case.

**SO ORDERED.**

**Date: July 23, 2026**
**New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**